837 So.2d 348 (2002)
Donna GRACEY and Joseph Gracey, Petitioners,
v.
Donald W. EAKER, Respondent.
No. SC00-153.
Supreme Court of Florida.
December 19, 2002.
*350 Nolan Carter and Karen R. Wasson, Orlando, FL, for Petitioners.
James B. Thompson of Thompson, Goodis, Thompson, Groseclose & Richardson, P.A., St. Petersburg, FL, for Respondent.
LEWIS, J.
We have for review Gracey v. Eaker, 747 So.2d 475 (Fla. 5th DCA 1999), in which the district court affirmed the dismissal of an action initiated by the petitioners, Donna and Joseph Gracey ("Graceys"), a couple allegedly injured by the counseling activities of a psychotherapist, against Dr. Donald W. Eaker ("Eaker"). The Graceys sought the recovery of emotional distress damages that were allegedly inflicted by Eaker's actions in revealing the most confidential of information disclosed to him by each individual during and only as part of a confidential and fiduciary relationship. In affirming the dismissal of the Graceys' action, the district court held that their complaint sounded in negligence and failed to adhere to the "requirement [of the impact rule] that some physical impact to a claimant ... be alleged and demonstrated before the claimant can recover [emotional distress] damages." Id. at 477.
In addition to affirming the dismissal of the petitioners' action, the district court certified a question of great public importance:
WHETHER AN EXCEPTION TO FLORIDA'S IMPACT RULE SHOULD BE RECOGNIZED IN A CASE WHERE INFLICTION OF EMOTIONAL INJURIES RESULTED FROM THE BREACH OF A STATUTORY DUTY OF CONFIDENTIALITY.
Id. at 478. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We are concerned that the certified question as phrased by the district court may be more expansive than necessary to resolve this case under the facts before us. Therefore, we rephrase the certified question limited to the facts involved here as follows:[1]
WHETHER FLORIDA'S IMPACT RULE IS APPLICABLE IN A CASE IN WHICH IT IS ALLEGED THAT THE INFLICTION OF EMOTIONAL INJURIES HAS RESULTED FROM A PSYCHOTHERAPIST'S BREACH OF A DUTY OF CONFIDENTIALITY TO HIS PATIENT, WHEN THE PSYCHOTHERAPIST HAS CREATED A *351 STATUTORY CONFIDENTIAL RELATIONSHIP.
For the reasons stated below, we answer the rephrased certified question in the negative and hold that the impact rule is inapplicable to the facts of the case before us.

FACTS
In a fourth amended complaint, the Graceys averred that Eaker is a licensed psychotherapist who, for profit, provided treatment to them in individual counseling sessions, ostensibly seeking to intervene in the most personal of matters directed to marital difficulties. They also alleged that Eaker, during individual therapy sessions,
would inquire about, and each of the [petitioners] would disclose to him, very sensitive and personal information that neither had disclosed to the other spouse at any time during their relationship. [Petitioners] would disclose this information because they were led to believe, by [Eaker], that such information was necessary for treatment purposes.
The petitioners further alleged that a direct violation of Florida law occurred in that despite being under a statutorily imposed duty to keep the disclosed information confidential,[2] Eaker nevertheless unlawfully divulged to each of the petitioners "individual, confidential information which the other spouse had told him in their private sessions." Subsequent to these disclosures, the Graceys set forth that they realized that Eaker had devised "a plan of action ... designed to get [them] to divorce each other." The Graceys claimed that such actions by Eaker constituted "breaches ... of his fiduciary duty of confidentiality [that was] owed [individually] to [them]."
With regard to the damages resulting from Eaker's actions, the Graceys alleged that
they have sustained severe mental anguish upon learning of [the] actions of the other spouse, of which they individually were not aware, and that [Eaker's] disclosure [of these actions] has caused irreparable damage to any trust that they would have had for each other.... [Moreover, they alleged that Eaker's] actions have caused great mental anguish for the[m] individually in their personal relationships with others due to their inability to trust the others in those personal relationships.
Additionally, the Graceys asserted that they have incurred substantial costs and expenses in undergoing further treatment in an attempt to correct the mental damage inflicted upon them by Eaker's actions.
In upholding the trial court's dismissal of the petitioners' action, the district court expressed that it was "constrained to agree" with Eaker's assertion that a dismissal was proper, "because Florida law does not recognize a cause of action for negligent infliction of emotional distress without an accompanying physical injury." Gracey, 747 So.2d at 477.

ANALYSIS
We conclude that while the determinations by both the trial court and the district court relied upon general principles of Florida tort law and general application of the "impact rule," such does not accommodate the intent and purpose of section 491.0147 of the Florida Statutes and renders its protection meaningless. Accepting all well-pled allegations as true, which we are required to do because this case is before us on the dismissal of the *352 action at the pleading stage,[3] we determine that the plaintiffs have presented a cognizable claim for recovery of emotional damages under the theory that there has been a breach of fiduciary duty arising from the very special psychotherapist-patient confidential relationship recognized and created under section 491.0147 of the Florida Statutes.
Decades ago, we commented on the nature of the fiduciary relationship:
If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.
Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 421 (1927). We have also accepted the concept that "[t]he purpose of a duty in tort is to protect society's interest in being free from harm." Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244, 1246 (Fla.1993). Here, the Graceys allege that Eaker advertised himself as a licensed psychologist with special competence as a marital therapist. The relationship between Eaker and the Graceys was not merely of a casual nature, which states typically do not regulate. For profit, Eaker intentionally interjected himself between the Graceys in the role of confidant and counselor, and under a veneer of trust and confidence encouraged each to reveal without hesitation the most private of thoughts, emotions, fears, and hopes. Without justification or authorization, Eaker is alleged to have repaid this repositing of confidence in him by placing the dagger of damage in the very soul of the Graceys' marriage, thereby exacerbating the problem for which the Graceys sought his assistance.
The Florida Legislature has recognized and found that one's emotional stability and survival must be protected to the same extent as physical safety and personal security. Our representatives have declared for the people of Florida that "emotional survival is equal in importance to physical survival." § 491.002, Fla. Stat. (2001). To preserve the health, safety, and welfare of Florida's citizens, our Legislature found itself compelled to take action to protect the confidentiality of the communications involved in the most private and personal relationships interwoven with mental health practitioners. In undeniable terms the public policy of this state guards emotional survival, which the Legislature has declared "affects physical and psychophysical survival." It is with this background and structure that the Legislature intended to protect the delicate and fragile disclosures within the professional relationship when it established section 491.0147 of the Florida Statutes, which states in pertinent part: "Any communication between any person licensed or certified under this chapter and her or his patient or client shall be confidential." If this legislative provision is to have any life or meaning and afford reliable protection to Florida's citizens, our people must have access to the courts without an artificial impact rule limitation, to afford redress if and when the fiduciary duty flowing from the confidential relationship and statutory protection is defiled by the disclosure of the most personal of information.
In addition to our stated public policy and statutory structure of protection for certain confidential relationships, we have recently recognized the fiduciary duty generally arising in counseling relationships in Doe v. Evans, 814 So.2d 370, 373-75 (Fla. 2002). There, one having marital difficulties *353 alleged that a priest intervened in the situation and during counseling activities breached a duty of trust and confidence by becoming sexually involved with her. See id. at 372-73. Recognizing the principles suggested in the Restatement (Second) of Torts, we noted that a fiduciary relationship does exist between persons when one is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship. See id. at 374. Further, one in such a fiduciary relationship is subject to legal responsibility for harm flowing from a breach of fiduciary duty imposed by the relationship. See id.
With this backdrop of both common law and statutory protection the source of Eaker's duty to the petitioners is easily identified. The statutory scheme clearly mandated that the communications between the petitioners and Eaker "shall be confidential." § 491.0147, Fla. Stat. (1997). This created a clear statutory duty that, if violated, generated a viable cause of action in tort. See, e.g., Lewis v. City of Miami, 127 Fla. 426, 173 So. 150, 152 (1937); Alford v. Meyer, 201 So.2d 489 (Fla. 1st DCA 1967).
The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages.[4] Florida courts have previously recognized a cause of action for breach of fiduciary duty in different contexts when a fiduciary has allegedly disclosed confidential information to a third party. See Barnett Bank of Marion County, N.A. v. Shirey, 655 So.2d 1156 (Fla. 5th DCA 1995) (plaintiff entitled to damages for breach of fiduciary duty because bank employee disclosed sensitive financial information to a third party).[5] Moreover, courts in other jurisdictions, along with legal commentators, have concluded that a fiduciary relationship exists between a mental health therapist and his patient. See, e.g., Hoopes v. Hammargren, 102 Nev. 425, 725 P.2d 238, 242 (1986) (psychiatrists and all physicians have fiduciary relationship with patients); Eckhardt v. Charter Hosp. of Albuquerque, 124 N.M. 549, 953 P.2d 722, 727-28 (Ct. App.1997) (non-physician mental health counselors have fiduciary relationship with their patients); MacDonald v. Clinger, 84 A.D.2d 482, 446 N.Y.S.2d 801 (1982) (noting that fiduciary responsibilities were "implicit in and essential to" the relationship between patient and his psychiatrist); Watts v. Cumberland County Hosp. System, Inc., 75 N.C.App. 1, 330 S.E.2d 242, *354 249-50 (1985) (fiduciary relationship exists between psychiatrist and patient), rev'd in part on other grounds, 317 N.C. 321, 345 S.E.2d 201 (1986); see also Benjamin M. Schutz, Legal Liability in Psychotherapy 12 (1982); Charles Eger, Psychotherapists' Liability for Extrajudicial Breaches of Confidentiality, 18 Ariz. L.Rev. 1061, 1065 (1976); Restatement (Second) of Torts, § 874 cmt. a. ("A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation.") (citation omitted).[6]
Clearly evident in the decisions of courts that have determined that a fiduciary relationship exists in the psychotherapist-patient and physician-patient contexts is the notion that a fiduciary has a duty not to disclose the confidences reposed in him by his patients. See Hoopes v. Hammargren, 725 P.2d at 242 (psychiatrists and all physicians have duty to keep confidences of patients); Eckhardt v. Charter Hosp. of Albuquerque, 953 P.2d at 727-29 (non-physician mental health therapists owed duty of confidentiality to patient); MacDonald v. Clinger, 446 N.Y.S.2d at 805 ("The relationship of the parties ... was one of trust and confidence out of which sprang a duty not to disclose [confidential information]."); Watts v. Cumberland County Hosp. System, Inc., 330 S.E.2d at 249-50 (psychiatrist had duty not to disclose confidential information).[7] These cases are also persuasive authority and support our conclusion that a psychotherapist who has created a fiduciary relationship[8] with his client owes that client a duty of confidentiality, and that a breach of such duty is actionable in tort.[9]
We have previously stated that "`[d]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection [or not]." Rupp v. Bryant, 417 So.2d 658, 667 (Fla.1982) (quoting William L. Prosser, Handbook of the Law of Torts *355 § 53 at 325-26 (4th ed.1971)). Here, the statute unambiguously indicates the intent of the Legislature to protect from unauthorized disclosure the confidences reposed by a patient in his or her psychotherapist. A breach of this duty not to disclose is therefore actionable under the common law cause of action for breach of fiduciary duty. See generally Berger v. Sonneland, 101 Wash.App. 141, 1 P.3d 1187, 1192-93 (2000) (allowing action in tort for breach of physicians' duty of confidentiality delineated in state statute), rev'd on other grounds, 144 Wash.2d 91, 26 P.3d 257 (2001); Eckhardt v. Charter Hosp. of Albuquerque, 953 P.2d at 728-29 (allowing action in tort for breach of psychological counselor's duty of confidentiality, the sources of such duty being both fiduciary relationship and state statutes).[10]
We emphasize that while we determine that a duty of confidentiality exists, it is not absolute. For instance, section 491.0147(1)-(3) of the Florida Statutes delineates three instances in which communications between patient and psychotherapist are not cloaked with confidentiality (none of which applies in the instant case). See also MacDonald v. Clinger, 446 N.Y.S.2d at 805 ("Disclosure of confidential information by a psychiatrist to a spouse [is] justified whenever there is a danger to the patient, the spouse or another person; otherwise information should not be disclosed without authorization."). It is unnecessary for us at this time to define the exact contours of the exceptions to the duty of confidentiality. The Graceys satisfied the "breach" and "causation" elements of their claim by alleging that Eaker disclosed the confidences of one spouse to the other, and that these disclosures were the proximate cause of their emotional distress. The remaining element of their cause of action, for which the district court certified the question of great public importance, concerns the damage element. Specifically, the issue is whether the "impact rule" is applicable when a psychotherapist is alleged to have inflicted emotional distress on the patient as a result of breaching his fiduciary duty of confidentiality.[11]
The "impact rule" requires that a plaintiff seeking to recover emotional distress damages in a negligence action prove that "the emotional distress ... flow[s] from physical injuries the plaintiff sustained in an impact [upon his person]." R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362 (Fla.1995). Florida's version of the impact rule has more aptly been described as having a "hybrid" nature, requiring either impact upon one's person or, in certain situations, at a minimum the manifestation of emotional distress in the form of a discernible physical injury or illness. See Kush v. Lloyd, 616 So.2d 415, 422 (Fla.1992). We have stated that "the underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." R.J., 652 So.2d at 362.
*356 We have, however, in a limited number of instances either recognized an exception to the impact rule or found it to be inapplicable.[12] In Kush v. Lloyd, we noted that the impact rule generally "is inapplicable to recognized torts in which damages often are predominately emotional." Kush, 616 So.2d at 422. Also in Kush, we held that the emotional distress damages of parents who had endured the wrongful birth of their deformed child, after having been assured by medical personnel that they were not at risk of conceiving a deformed child, were not subject to proof under the impact rule. See id. at 423. We recognized that if the impact rule was inapplicable to emotional distress damages for torts such as defamation or invasion of privacy, in which the emotional distress of the victim was likely less severe, it should also be inapplicable to the more severe emotional distress of parents who had been assured that they were not at risk of bringing a deformed child into the world. See id. at 422-23.[13]
The emotional distress that the Graceys allege they have suffered is at least equal to that typically suffered by the victim of a defamation or an invasion of privacy. Indeed, we can envision few occurrences more likely to result in emotional distress than having one's psychotherapist reveal without authorization or justification the most confidential details of one's life. Our reasoning in Kush thus provides ample support for the notion that the impact rule should be inapplicable to the instant case.[14]
*357 Furthermore, in MacDonald v. Clinger, the New York appellate court considered a case very factually similar to the one before us. In MacDonald, it was alleged that during two extended courses of treatment with the defendant psychiatrist,
[the] plaintiff revealed intimate details about himself which [the] defendant later divulged to plaintiff's wife without justification and without consent. As a consequence of such disclosure, plaintiff alleges that his marriage deteriorated, that he lost his job, that he suffered financial difficulty and that he was caused such severe emotional distress that he required further psychiatric treatment.
446 N.Y.S.2d at 802. Similar to the instant case, the defendant in MacDonald filed a motion to dismiss, which was granted.
The court in MacDonald characterized the relationship between the plaintiff and his psychiatrist as "one of trust and confidence out of which sprang a duty not to disclose. Defendant's breach [of that duty] was ... a violation of a fiduciary responsibility to plaintiff implicit in and essential to [their] relation[ship]." Id. at 805. Most important for our purposes is that the court in MacDonald did not subject the plaintiff to any special pleading requirements, such as proof under the strictures of the impact rule, regarding his emotional distress damages. Instead, the court concluded that "such [a] wrongful disclosure is a breach of the fiduciary duty of confidentiality and gives rise to a cause of action sounding in tort." Id. at 802. We see this line of reasoning in MacDonald as highly persuasive and hereby adopt it.
Taking into consideration our decision in Kush, the decision in MacDonald v. Clinger, the case law on the nature of the fiduciary relationship in the psychotherapist-patient and physician-patient contexts and the attendant duty of confidentiality imposed on the practitioner, along with the intent of the Legislature in passing section 491.0147 of the Florida Statutes, there is ample authority to determine that the impact rule should be inapplicable in the case before us. Therefore, we hold that the impact rule is inapplicable in cases in which a psychotherapist has created a fiduciary relationship and has breached a statutory duty of confidentiality to his or her patient. We therefore answer the rephrased certified question in the negative. We make no comment or determination regarding the merits of the instant case.
The concerns voiced that our decision today will "open the floodgates" of litigation are without merit. We note that the civil trial system in our country has withstood the test of time for more than 200 years. It is a system in which the finder of fact ultimately determines which allegations of injury are meritorious and which are not. We are confident this system will continue to function well when it considers claims of the type now before us. Our Legislature has established the public policy of this state, has stated that emotional status is of equal importance as physical status, and has specifically declared the type of information allegedly disclosed as confidential and privileged. The only reasonable and logical injuries generally flowing from a violation of the statutory protection are emotional in nature. Imposition of the impact rule in this context would render the legislative intent and its statutory implementation meaningless and without substance. The artificial impediment of an impact rule should not *358 be imposed to override clear legislative intent.
On the other hand, our holding should not be construed as bringing into question the continued viability of the impact rule in other situations. Six years ago, this Court stated its belief in the overall efficacy of the impact rule:
We reaffirm ... our conclusion that the impact rule continues to serve its purpose of assuring the validity of claims for emotional or psychic damages, and find that the impact rule should remain part of the law of this state.
R.J. v. Humana of Florida, Inc., 652 So.2d at 363. Today we simply hold that the impact rule is inapplicable under the particular facts of the case before us.
Accordingly, we quash the decision of the district court to the extent that it affirmed the dismissal of the petitioners' claim for emotional distress damages on the basis of the applicability of the impact rule. We remand the cause to the district court with directions that the petitioners be allowed to pursue their claims without having to conform proof of their emotional distress damages to the strictures of the impact rule.
It is so ordered.
ANSTEAD, C.J., and SHAW and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion.
HARDING, Senior Justice, dissents with an opinion, in which WELLS, J., concurs.
PARIENTE, J., concurring.
I agree with the majority's decision. However, I write to express my view that Florida should join the growing number of states that have abolished the arbitrary restriction on tort claims imposed by the judicially created impact rule.[15]
The impact rule, as applied in Florida, holds that, in the absence of a discernible physical injury or illness flowing from emotional distress or an actual impact, a person cannot recover compensatory damages for mental distress or psychiatric injury. See generally Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234, 1236-38 (Fla. *359 2001). The rationale for the impact rule as a limitation on certain claims is that it serves as a means of "assuring the validity of claims for emotional or psychic damages." R.J. v. Humana of Florida, Inc., 652 So.2d 360, 363 (Fla.1995). However, this Court's wariness of psychic damages has not prevented it from carving out exceptions to the impact rule in a variety of circumstancesas the present case demonstrates. See, e.g., Kush v. Lloyd, 616 So.2d 415, 422-23 (Fla.1992); Champion v. Gray, 478 So.2d 17, 19-20 (Fla.1985), receded from on other grounds in Zell v. Meek, 665 So.2d 1048, 1053 (Fla.1995).
In my view, the impact rule reflects an outmoded skepticism for damages resulting from mental injuries. As best summarized by the Illinois Supreme Court:
The requirement [of physical manifestation of emotional distress] is overinclusive because it permits recovery for mental anguish when the suffering accompanies or results in any physical impairment, regardless of how trivial the injury. More importantly, the requirement is underinclusive because it arbitrarily denies court access to persons with valid claims they could prove if permitted to do so.
Additionally, the requirement is defective because it "encourages extravagant pleading and distorted testimony." To continue requiring proof of physical injury when mental suffering may be equally recognizable standing alone would force "victim[s] to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured."
Corgan v. Muehling, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602, 608 (1991) (quoting St. Elizabeth Hosp. v. Garrard, 730 S.W.2d 649, 652 (Tex.1987)) (citations omitted).
I believe that the traditional foreseeability analysis applicable to negligence claims is the more appropriate framework for a limitation on tort recovery in this State. See McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others."). The respondent psychotherapist in this case owed a duty of confidentiality to the petitioners. The petitioners allege that they were direct victims of the respondent's breach of that duty because the respondent revealed the most confidential communications gained during the psychotherapist-client relationship. There should be no arbitrary limitation on the petitioners' ability to claim damages as a result of the substantial breach of a fiduciary duty such as the one that allegedly occurred in this case. It seems reasonable to entrust Florida juries, which are routinely asked to determine pain and suffering when an emotional injury is accompanied by a physical injury, to determine fault and damages surrounding claims of purely mental injuries. See Corgan, 158 Ill.Dec. 489, 574 N.E.2d at 609 (noting its faith in jurors or other judicial factfinders to discern whether a claimant has suffered emotional distress that should be compensated). Thus, I certainly concur with the majority that the impact rule should not bar the petitioners' recovery in this case.
HARDING, Senior Justice, dissenting.
While I am sympathetic to the wrong petitioners allege, I see no reason to depart from the long-standing public policy and jurisprudence of this State requiring a plaintiff seeking emotional distress damages to show that the alleged emotional *360 distress is evident in some form of physical injury, i.e., "impact." With this decision, the majority, in effect, puts the whole camel under the tent, as it is more than likely that this Court will be presented with equally compelling scenarios of alleged emotional trauma which will be difficult to distinguish from this case, and thus the public policy requiring the rule will no longer be policy at all. Indeed, there will be no requirement of impact, and this case is sure to become precedent allowing almost all parties who claim damages for emotional distress to survive dismissal of their actions despite speculative, or even fictitious, claims of emotional injury which the rule was designed to prevent.
Moreover, I find that no rational basis has been presented here to abandon this long-established policy. Rather, by judicial fiat, the majority carves out a major exception based solely on the emotional injury alleged here, which effectively eviscerates the rule requiring any impact in the claim for emotional distress damages. At the outset of its analysis, the majority asserts that the lower courts' determinations "do[ ] not accommodate the intent and purpose of section 491.0147 of the Florida Statutes." Majority op. at 351 (emphasis added). Yet nothing in the express language of section 491.0147 or its legislative history comes close to expressing an "intent or purpose" to do away with Florida's long-standing "impact rule." Contrary to the majority's assertion of the existence of "clear legislative intent," majority op. at 358, the legislative history of section 491.0147 is non-illuminating as to any other intended purpose of the statute beyond the regulatory context.[16] Even if I were to "read in" a civil cause of action for its violation (as does the majority), I see nothing in the wording of the statute or its legislative history eliminating the requirement for an impact when alleging emotional distress under this statute.
Furthermore, based on our decision in Time Insurance Co. v. Burger, 712 So.2d 389 (Fla.1998), it also appears that the Legislature knows how to write a statute which allows for emotional distress damages to be claimed under it, without being subject to the impact rule, if it chooses to do so. Specifically, in Time Insurance, this Court considered whether the fact that section 624.155, Florida Statutes (1991), authorized damages for first-party suits against certain insurance carriers for bad-faith failure to pay claims, did so in such a manner that proof of emotional distress damages would not be required under the strictures of the impact rule. In holding that emotional distress damages claimed pursuant to the statute were not subject to proof under the impact rule, this Court based its reasoning on the language of the statute itself, which stated that damages "shall include those ... which are reasonably foreseeable result of a specified violation of this section." 712 So.2d at 392. In this case, however, the Legislature has made no such authorization under the statute at issue and, therefore, strictly as a matter of statutory interpretation and this Court's jurisprudence, damages for emotional distress incurred as a result of a violation of section 491.0147 should not be recoverable in the absence of proof which satisfies the impact rule.
In addition, despite the majority's characterization of the requirement to allege some sort of physical manifestation of injury when making a claim for emotional distress damages as "an artificial `impact rule' limitation," majority op. at 352, this *361 Court has for over a century repeatedly stated that the impact rule supplies a useful function of weeding out fraudulent claims for negligent infliction of emotional distress.
The impact rule has had a long legal history in this state, beginning with this Court's decision in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893). In essence, the impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), review denied, 623 So.2d 494 (Fla.1993). As explained by one commentator, the underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims. 1 Thomas M. Cooley, Cooley on Torts 97 (3d ed.1906). As this Court stated in Saunders, compensatory damages for emotional distress are "spiritually intangible," are beyond the limits of judicial action, and should be dealt with through legislative action rather than judicial decisions. 32 Fla. at 448, 14 So. at 152. Another commentator has stated that the requirement of a physical impact gives courts a guarantee that an injury to a plaintiff is genuine. W. Page Keeton et al., Prosser and Keeton on the Law of Torts §§ 54, at 363 (5th ed.1984). Further, without an impact requirement, defendants would not be sure whom they had injured or where they may have injured a person, thus paralyzing their ability to defend themselves. Id. at 364.
In recent years, we have continued to uphold the impact rule, finding that the underlying basis for the rule still exists and that no new reason has been shown to justify overruling prior decisions of this Court regarding this issue. For instance, in Gilliam v. Stewart, 291 So.2d 593 (Fla.1974), we found that an individual whose physical injuries were allegedly due to physical fright suffered when an automobile struck her house could not recover for those injuries because she had failed to show the requisite physical impact. Similarly, in Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla.1985), we found that the driver of a defective automobile that struck and killed the driver's mother had no cause of action for his mental distress because he sustained no physical injury.
R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362-63 (Fla.1995) (emphasis added).
Furthermore, the exceptions to the impact rule are few. The first truly recognized exception to the impact rule was recognized in Champion v. Gray, 478 So.2d 17 (Fla.1985). In Champion, this Court recognized the claim of negligent infliction of emotional distress (not unlike the claim alleged here) in situations in which "damages flow from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured." Id. at 20. It is important to note, however, that Champion provided only a partial exception to the impact rule, because while the claimant was not required to show impact or impingement upon her physical person, she was nevertheless still required to show a "significant discernible physical injury" as evidence of the alleged psychic trauma. Id.
*362 Other exceptions to the impact rule come in the form of judicial decrees that the impact rule should not apply to the seeking of emotional distress damages in connection with certain torts because, unlike the circumstances of the instant case, the very commission of those torts is proof enough that significant emotional distress for the victims will ensue. See Kush v. Lloyd, 616 So.2d 415, 422 (Fla.1992) (holding impact rule does not apply when emotional distress damages are sought in connection with the tort of wrongful birth, because those damages are inseparably connected to, and obviously inure to the victims of, that tort); see also Tanner v. Hartog, 696 So.2d 705, 708 (Fla.1997) (holding impact rule inapplicable to tort of negligent stillbirth because the emotional distress damages flow obviously from the cause of action).
Moreover, in both Kush and Tanner, this Court took great pains to say that it was finding the impact rule inapplicable only in very strictly confined circumstances. See Tanner, 696 So.2d at 709 (noting the desirability of the impact rule for proving the genuineness of emotional distress claims and holding the impact rule inapplicable only to "narrow classes of cases" like negligent stillbirth and wrongful birth); Kush, 616 So.2d at 423 n. 5 (noting the inapplicability of impact rule to wrongful birth situations likely reaches the "outer limits" of recovery in the absence of showing of impact and consequent mental distress manifested by physical injury).
While it is also true that emotional distress damages connected with some predominately emotional torts, like defamation and invasion of privacy, are not subject to proof under the impact rule, this Court in R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla.1995), also held that emotional distress damages pursuant to a claim for negligent (false) diagnosis of HIV-positive status are subject to the impact rule. In R.J., a patient who was misdiagnosed as being HIV-positive brought suit against the hospital, laboratory, and physician responsible for misdiagnosis. This Court held that although the patient claimed to have suffered "bodily injury including hypertension, pain and suffering, mental anguish, [and] loss of capacity for the enjoyment of life," he did not prove a physical manifestation of resultant emotional distress to satisfy the requirements of the impact rule. Id. at 364. Although this Court was not unsympathetic to the possibility that emotional distress might accompany a misdiagnosis of HIV-positive status, it nevertheless declined the plaintiff's request to abolish the impact rule entirely or carve out a further exception to it for victims of a misdiagnosis of HIV-positive status. The Court affirmatively stated that "the impact rule continues to serve its purpose of assuring the validity of claims for emotional or psychic damages, and ... the impact rule should remain part of the law of this state." Id. at 363.
As I expressed at the outset of this opinion, I am sympathetic the situation surrounding petitioners' claim. However, I also recognize that, unfortunately, the law does not provide a remedy for every wrong. Despite the majority's assessment of the factual circumstances of this case (e.g., "placing the dagger of damage in the very soul of the Gracey's marriage," majority op. at 352), the essence of the impact rule is in its demand for objective, quantifiable proof of the genuineness of claimed emotional distress. Therefore, I would find reliance on a New York case a slim reed upon which to abandon Florida's long-standing public policy of preventing speculative and fictitious claims for emotional distress damages in negligence actions.
*363 Instead, I would approve district court's finding that the trial court was correct in dismissing with prejudice petitioners' complaint because the complaint alleged a claim of negligence resulting in only emotional injuries, and petitioners failed to allege an impact or impingement upon their person or any physical manifestation of their alleged emotional distress. Accordingly, I would answer the certified question in the affirmative.
WELLS, J., concurs.
NOTES
[1] We have rephrased certified questions in the past to conform them more properly to the true issue under review. See, e.g., Waite v. Waite, 618 So.2d 1360 (Fla.1993).
[2] Section 491.0147, Florida Statutes (1997), discussed infra, requires psychotherapists to keep confidential the substance of patient communications.
[3] See Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 n. 4 (Fla.1992).
[4] See, e.g., Stevens v. Cricket Club Condominium, Inc., 784 So.2d 517 (Fla. 3d DCA 2001) (examining damages as element in claim); Jacobs v. Vaillancourt, 634 So.2d 667, 670 (Fla. 2d DCA 1994) (examining duty and breach of duty as elements in claim); Bernstein v. True, 636 So.2d 1364, 1367 (Fla. 4th DCA 1994) (examining causation as element in claim); see also Mosier v. Southern California Physicians Ins. Exchange, 63 Cal.App.4th 1022, 74 Cal.Rptr.2d 550, 565 (1998) ("The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.").
[5] In O'Keefe v. Orea, 731 So.2d 680, 686 (Fla. 1st DCA 1998), the district court noted the existence of a fiduciary relationship not only between a psychiatrist and his patient who was an emotionally troubled minor prone to violence, but also between the psychiatrist and the parents of the emotionally troubled minor. The parents had consulted with the psychiatrist on how best to control the behavior of their son. O'Keefe appears to be the case in which a Florida appellate court has most directly commented on the issue of whether a fiduciary relationship exists between a mental health therapist and his patient. The cause of action in O'Keefe, however, was not described as an action for breach of fiduciary duty.
[6] This Court, along with courts in other jurisdictions, has determined that a fiduciary relationship exists between physician and patient, whether the physician is a psychotherapist or not. See Nardone v. Reynolds, 333 So.2d 25, 39 (Fla.1976) (recognizing general nature of fiduciary relationship between physician and patient), receded from on other grounds, Hearndon v. Graham, 767 So.2d 1179 (Fla. 2000); see also Morris v. Consolidation Coal Co., 191 W.Va. 426, 446 S.E.2d 648, 651 (1994); Alexander v. Knight, 197 Pa.Super. 79, 177 A.2d 142, 146 (1962) (fiduciary relationship between physician and patient). But see Quarles v. Sutherland, 215 Tenn. 651, 389 S.W.2d 249 (1965) (stating there is no enforceable duty of confidentiality in physician-patient context, in absence of statute contrary to common law rule); Boyd v. Wynn, 286 Ky. 173, 150 S.W.2d 648 (1941) (same, dicta).

In Alexander v. Knight, the court stated its belief that "members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients." Alexander, 177 A.2d at 146. We believe this statement is equally applicable to non-physician psychotherapists, who are as much engaged in the healing arts as are physicians.
[7] The existence, vel non, of a duty is a question of law and is appropriate for an appellate court to review. See, e.g., McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992).
[8] The Graceys allege that Eaker is licensed under chapter 491, Florida Statutes (1997).
[9] We make no determination, in reviewing the trial court's dismissal of the Graceys' action, that a fiduciary relationship was formed between Eaker and the Graceys (and if formed, that it was breached). Such determinations are for the finder of fact to make at trial. See Palafrugell Holdings, Inc. v. Cassel, 825 So.2d 937, 939 (Fla. 3d DCA 2001); Uvanile v. Denoff, 495 So.2d 1177, 1178-79 (Fla. 4th DCA 1986); Atlantic Nat'l Bank v. Vest, 480 So.2d 1328, 1333 (Fla. 2d DCA 1985).
[10] The respondent argues that because section 491.0147 does not explicitly authorize a cause of action, the petitioners may not bring a cause of action for breach of the duty that the statute imposes. This assertion fails to take into account cases such as Lewis v. City of Miami and Alford v. Meyer, in which the plaintiffs sued under the common law for breach of a duty that was imposed by statute.
[11] The questions of whether Eaker breached his duty of confidentiality to the Graceys, and whether that breach was the proximate cause of the emotional distress the Graceys allege they suffered, are for the jury to determine. Also for the jury to determine is the amount of damages to which the Graceys may be entitled.
[12] See Time Ins. Co. v. Burger, 712 So.2d 389 (Fla.1998) (within narrowly defined statutory parameters, emotional distress damages not subject to proof under impact rule); Tanner v. Hartog, 696 So.2d 705 (Fla.1997) (impact rule inapplicable to claim for negligent stillbirth); Kush v. Lloyd, 616 So.2d 415 (Fla.1992) (impact rule inapplicable to parents' claim for wrongful birth of their severely deformed child); Champion v. Gray, 478 So.2d 17, 20 (Fla.1985) (claimant "who, because of his relationship to [an] injured party and his involvement in the event causing that injury, is foreseeably injured," is not required to prove impact upon his person but is required to show proof of emotional distress in form of discernible physical illness or injury).
[13] We also note that the impact rule is not applied to claims for loss of consortium. See, e.g., Frye v. Suttles, 568 So.2d 983 (Fla. 1st DCA 1990); Albritton v. State Farm Mutual Automobile Ins. Co., 382 So.2d 1267 (Fla. 2d DCA 1980).
[14] The Graceys rely on Kush as primary support for a major revamping of the impact rule, which we decline to undertake. Eaker, on the other hand, argues that Kush is inapplicable to the case before us because in Kush we said that "the impact doctrine should not be applied where emotional damages are an additional `parasitic' consequence of conduct that itself is a freestanding tort apart from any emotional injury." Kush, 616 So.2d at 422. Eaker asserts that this statement means that the impact rule is inapplicable only when an independent tort, such as wrongful birth, is committed and emotional distress damages are parasitically attached to that tort. He argues that no independent tort was committed in the instant case because the Graceys' entire cause of action is bottomed on an allegation of the negligent infliction of emotional distress.

Eaker misapprehends the import of our statement in Kush, which we made as an alternative basis for holding the impact rule inapplicable to wrongful birth claims; it clearly was not intended to impose a sine qua non for the recovery of emotional distress damages. Moreover, in Kush we also made clear our feeling that "[t]he essence of the impact rule remain[ed] intact because ... the tort [of wrongful birth] was committed directly against the mother and the father." Id. at 423 n. 5. The same logic holds true in the case before us, because the tort of breach of fiduciary duty is alleged to have been committed directly against the Graceys.
We also find unavailing Eaker's reliance, as persuasive authority, on Doe v. Univision Television Group, Inc., 717 So.2d 63 (Fla. 3d DCA 1998). Eaker fails to consider that in Univision Television Group, the district court refused to dismiss the plaintiff's claim for invasion of privacy. As we noted in Kush, emotional distress damages in invasion of privacy claims typically are not subject to the strictures of the impact rule.
[15] "Although a majority of jurisdictions continue to adhere to the traditional rule requiring some form of physical injury ... there is an emerging judicial trend towards the abolition of the physical injury requirement as a guarantee of the genuineness of claims for mental distress. These jurisdictions have abandoned the artificial restrictions and barriers to recovery ... in favor of a greater reliance on general tort law principles and the sophistication of jurors and the medical profession." Scott D. Marrs, Mind Over Body: Trends Regarding the Physical Injury Requirement in Negligent Infliction of Emotional Distress and "Fear of Disease" Cases, 28 Tort & Ins. L.J. 1, 39 (1992). See, e.g., Taylor v. Baptist Medical Ctr. Inc., 400 So.2d 369, 374 (Ala.1981); Molien v. Kaiser Found. Hosps., 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813, 817-21 (1980); Montinieri v. Southern New Eng. Tel. Co., 175 Conn. 337, 398 A.2d 1180, 1184 (1978); Rodrigues v. State, 52 Haw. 156, 472 P.2d 509, 519-20 (1970); Corgan v. Muehling, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602, 606-09 (1991); Oswald v. LeGrand, 453 N.W.2d 634, 639 (Iowa 1990); Clomon v. Monroe City Sch. Bd., 572 So.2d 571, 574-78 (La.1990), cited in Nesom v. Tri Hawk Int'l, 985 F.2d 208, 210 (5th Cir.1993); Bass v. Nooney Co., 646 S.W.2d 765, 772 (Mo.1983); Johnson v. Supersave Mkts., Inc., 211 Mont. 465, 686 P.2d 209, 212-13 (1984); Sell v. Mary Lanning Mem'l Hosp. Ass'n, 243 Neb. 266, 498 N.W.2d 522, 524-25 (1993); Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 395 S.E.2d 85, 97-98 (1990); Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983); St. Elizabeth Hosp. v. Garrard, 730 S.W.2d 649, 652 (Tex.1987), overruled in part by Boyles v. Kerr, 855 S.W.2d 593 (Tex.1993); Bramer v. Dotson, 190 W.Va. 200, 437 S.E.2d 773, 774-75 (1993).
[16] Chapter 491 of the Florida Statutes addresses the licensing and regulatory criteria to which psychotherapists must adhere.