881 So.2d 703 (2004)
Marjorie WILLIS and Ray Willis, her husband, Appellants,
v.
GAMI GOLDEN GLADES, LLC, a Florida corporation, d/b/a Holiday Inn and American Knights Security, Inc., a Florida corporation, Appellees.
No. 3D03-2657.
District Court of Appeal of Florida, Third District.
September 9, 2004.
Sams, Martin, Lipsky, Lister Kaufman and David P. Lister, Miami Lakes; Barbara Green, for appellants.
*704 Conroy, Simberg, Ganon, Krevans Abel and Hinda Klein, Hollywood; Thomas J. Morgan, Miami, and Justin Ziegler, for appellees.
Before SCHWARTZ, C.J., and GERSTEN and WELLS, JJ.
SCHWARTZ, Chief Judge.
This is an appeal from a summary judgment for the defendants rendered on the ground that the plaintiff did not satisfy the Florida impact rule so as to permit recovery for the severe psychological damage she had allegedly sustained as a result of the negligence of the defendants in failing to provide her protection from foreseeable criminal action. We affirm but certify to the Supreme Court that the case involves questions of great public importance.
Because the summary judgment was entered against the plaintiff below, we take our statement of the facts from the appellant's brief, which we believe fairly describes the record evidence in the required light most favorable to her position:
Marjorie Willis was a guest at a Holiday Inn hotel owned by Defendant Gami Golden Glades, LLC. Gami contracted for security services with Defendant American Knights Security, Inc.
When Mrs. Willis arrived at the Holiday Inn, there was no room in the parking lot to park her car. A security guard instructed her to park in the lot across the street. Mrs. Willis expressed concern because the lot was dark and the neighborhood unfamiliar, but the guard assured her that it was "safe to park next door," and instructed her to park there. The guard refused to park her car for her, or to go with her while she parked. Instead,
He said, no, it's safe. He emphasize[d] it is safe. And then he [told] me to move my car, I got to move it.
Ms. Willis parked her car across the street, because the guard told her to.
As soon as Ms. Willis parked and opened the door and put her foot out, "there was a gun to my head."
The gun actually touched her head. The gunman instructed her to empty her pockets, but she froze. She stepped out of the car as the gunman continued to order her to empty her pockets.
He said  he said it again, "empty your pockets." And I had my pocketbook on my arm. And I step out of the car because I didn't know what he meant and then he said, "I said empty your pockets." And I heard the gun say click. So then, I take my pocketbook and I stepped out and then I start to move and I couldn't. It happened so fast.
Then when I started to walk away, he take the gun and he wave me back. He wave me back to the car. He did this, and "I say empty your pockets." And then I thought he was really going to kill me....
And he told me to lift my clothes and he made me lift my clothes up and he take his hand and patting me on the back because I had pants on.
* * *
He patted me. I was so scared....
The robber
"made me lift my clothes and he pat[ted] me and all my body was exposed".
The robber then took her rental car and drove off.
The security guard refused to help Mrs. Willis. He acted "like he never saw me." Mrs. Willis found no help from the hotel personnel, either. She spent a sleepless night in the room she *705 shared with her friend, Debby, walking the floor in "agony", "scared".
The next day, Ms. Willis went to the emergency room. Since then, she has been under the treatment by a psychiatrist and a psychologist, as well as her general practitioner, for anxiety, depression, panic attacks and posttraumatic stress disorder. She has been on medication, including Paxil, Buspar, Wellbutrin and Zoloft. She is afraid everywhere she goes; her relationship with her husband has deteriorated. She is "not like before."
* * *
Ms. Willis offered the uncontradicted affidavit of her psychologist, who stated that her injuries:
include, but are not necessarily limited to, the following physical manifestations of injuries resulting from the attack:
a) sexual dysfunction;
b) peripheral temperature changes;
c) muscle tightening; and
d) increased sweat gland activity.
Nevertheless, the Defendants contended that Mrs. Willis' injuries do not satisfy the "impact rule".
* * *
Over the Plaintiffs' objection that the Defendants had the burden of proof, and had not satisfied that burden, the trial court accepted the Defendants' argument, and granted the Defendants' motion for summary judgment. Ms. Willis and her husband bring this appeal from that order.
The trial court based its decision on what it believed, and we agree, is the controlling effect of Ruttger Hotel Corporation v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997), which is almost uncanny in its resemblance to the controlling facts of this case. While we acknowledge our discomfiture with doing so, because we are unable meaningfully to distinguish what we think are the batteries committed by the malefactor upon the victim in that case from those in this one, the panel is at this stage bound to follow that decision. Accordingly, on the authority of Ruttger Hotel Corporation v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997), we hold that the trial judge properly found that the plaintiff's cause of action, is, notwithstanding evidence of the unwelcome touching of her person, barred by the Florida impact rule. Cf. Ruttger, 691 So.2d at 1179 (Shevin, J., specially concurring).
In the light of the continuing uncertainty as to the content, scope, and wisdom of the Florida impact rule, we certify that this case involves the following questions of great public importance:
1. Is the evidence that the plaintiff was touched against her will by the pistol placed to her head and in "patting down" her body sufficient to satisfy the Florida impact rule? See and compare, e.g., Gracey v. Eaker, 837 So.2d 348, 355 (Fla.2002); Zell v. Meek, 665 So.2d 1048 (Fla.1995); Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), review denied, 492 So.2d 1331 (Fla.1986).
2. Is the evidence that the plaintiff was apparently the object of an assault and multiple batteries[1] sufficient to satisfy a "free standing tort" exception to the impact rule which may *706 exist in Florida? See Kush v. Lloyd, 616 So.2d 415 (Fla.1992).
3. Is the innkeeper-guest relationship involved in this case a "special relationship" under an exception to the impact rule which may exist in Florida? Rowell v. Holt, 850 So.2d 474 (Fla.2003); Gracey v. Eaker, 837 So.2d 348 (Fla.2002).
4. Should the impact rule be abolished?
Affirmed, questions certified.
NOTES
[1] She may also have been the victim of an intentional infliction of severe mental distress. See Johnson v. Thigpen, 788 So.2d 410 (Fla. 1st DCA 2001). However, this tort was not alleged in the complaint or presented on appeal.