967 So.2d 846 (2007)
Marjorie WILLIS, et vir., Petitioners,
v.
GAMI GOLDEN GLADES, LLC., etc., et al., Respondents.
No. SC04-1929.
Supreme Court of Florida.
October 18, 2007.
Barbara Green, Coral Gables, Florida and David P. Lister of Martin, Lister and Alvarez, Miami Lakes, FL, for Petitioners.
Hinda Klein of Conroy, Simberg, Ganon, Krevans and Abel, P.A., Hollywood, FL, and Thomas J. Morgan, Sr., Coconut Grove, FL, for Respondents.
Robert S. Glazier, Miami, FL, on behalf of Academy of Florida Trial Lawyers, as Amicus Curiae.
PER CURIAM.
We have for review a decision of a district court of appeal on the following questions, *848 which the court certified to be of great public importance:
1. IS THE EVIDENCE THAT THE PLAINTIFF WAS TOUCHED AGAINST HER WILL BY THE PISTOL PLACED TO HER HEAD AND IN "PATTING DOWN" HER BODY SUFFICIENT TO SATISFY THE FLORIDA IMPACT RULE? SEE AND COMPARE, E.G., GRACEY V. EAKER, 837 So.2d 348, 355 (Fla.2002); ZELL V. MEEK, 665 So.2d 1048 (Fla. 1995); EAGLE-PICHER INDUSTRIES, INC. V. COX, 481 So.2d 517 (Fla. 3D DCA 1985), REVIEW DENIED, 492 So.2d 1331 (Fla.1986).
2. IS THE EVIDENCE THAT THE PLAINTIFF WAS APPARENTLY THE OBJECT OF AN ASSAULT AND MULTIPLE BATTERIES SUFFICIENT TO SATISFY A "FREE STANDING TORT" EXCEPTION TO THE IMPACT RULE WHICH MAY EXIST IN FLORIDA? SEE KUSH V. LLOYD, 616 So.2d 415 (Fla.1992).
3. IS THE INNKEEPER-GUEST RELATIONSHIP INVOLVED IN THIS CASE A "SPECIAL RELATIONSHIP" UNDER AN EXCEPTION TO THE IMPACT RULE WHICH MAY EXIST IN FLORIDA? ROWELL V. HOLT, 850 So.2d 474 (Fla. 2003); GRACEY V. EAKER, 837 So.2d 348 (Fla.2002).
4. SHOULD THE IMPACT RULE BE ABOLISHED?
Willis v. Gami Golden Glades, LLC, 881 So.2d 703, 705-06 (Fla. 3d DCA 2004) (footnote omitted). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The instant action comes for review after the Third District Court of Appeal has affirmed a final summary judgment in favor of the defendants/respondents, Gami Golden Glades, LLC (hereinafter "Gami") and American Knights Security, Inc. (hereinafter "American Security"). See Willis v. Gami Golden Glades, LLC, 881 So.2d 703 (Fla. 3d DCA 2004). In affirming the summary judgment, the district court held that Florida's impact rule precluded plaintiffs/petitioners (hereinafter "the Willises") from recovering for severe psychological damage allegedly suffered by Marjorie Willis (hereinafter "Mrs. Willis") as a result of the negligence of the defendants/respondents in failing to exercise reasonable care to protect her from foreseeable criminal action. See id. at 704.
Procedural rules require that the facts be viewed most favorably to Mrs. Willis in the review of this summary final judgment. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985) ("The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought."). The facts developed below establish that Mrs. Willis was a guest at a Holiday Inn hotel owned by Gami which had contracted for security services with American Security. See id. When Mrs. Willis arrived at the Holiday Inn for her stay, there were no parking spaces available in the hotel parking lot immediately adjacent to the hotel structure. See id. A security guard specifically instructed her to park her vehicle in a parking lot across the street, and when Mrs. Willis expressed concern because the lot was dark and the neighborhood unfamiliar, the guard assured her that it was "safe to park next door" and instructed that she park there. See id. The guard refused any further assistance, to park the car for her, or to even watch for her as she moved to the location designated. See id. Instead, the guard continued to insist that the area was safe, emphasized its safe and secure location, and directed that she move her car *849 across the street. See id. After Mrs. Willis proceeded to park her vehicle across the street in the location directed by the guard and opened the car door, a gun was placed to her head as she began to exit the vehicle. See id.
She stepped out of the car with her pocketbook on her arm as the gunman ordered that she empty her pockets. See id. During this confrontation, the gunman placed the gun to Mrs. Willis's head and she heard the gun click as if firing. See id. She attempted to move but was unable to do so. See id. As she attempted to walk away, the gunman used the weapon to wave her back to the car. See id. As he made this motion, and issued additional demands, she thought she was facing death. See id. The assailant then demanded that Mrs. Willis lift her clothing and as she did so, he proceeded to place his hands on her, patting down her exposed body. See id.
After the gunman had stolen her rental car and driven off, the security guard refused to provide assistance to Mrs. Willis. See id. The guard attempted to act as though he had never seen her. See id. Mrs. Willis found no greater help from the hotel personnel inside the facility. See id. Mrs. Willis experienced a sleepless night in the Holiday Inn hotel room she shared with her friend, walking the floor in "agony" and "scared." See id. at 704-05.
The next day, Mrs. Willis was seen in a local emergency room. See id. at 705. Since that time, she has been under the care and treatment of a psychiatrist and a psychologist, as well as her general practitioner, for anxiety, depression, panic attacks and posttraumatic stress disorder. See id. She has been on medication, including Paxil, Buspar, Wellbutrin and Zoloft. See id. She is afraid everywhere she goes; her relationship with her husband has deteriorated. See id. Her life is simply nothing like it was before this frightening experience. See id. As a direct result of this encounter, the treating psychologist described the following physical manifestations of injuries resulting from the attack: (1) sexual dysfunction; (2) peripheral temperature changes; (3) muscle tightening; and (4) increased sweat gland activity. See id. This medical evidence remains uncontradicted. See id. The defendants simply assert that the "impact rule" precludes this action. See id. The courts below accepted the defendants' argument and we now review the issues presented and questions certified.[1]
The affirmance by the Third District below of the final summary judgment was logically based on its prior opinion in Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997), which the district court found "almost uncanny in its resemblance to the controlling facts of this case." Willis, 881 So.2d at 705. However, "[i]n light of the continuing uncertainty as to the content, scope, and wisdom of the Florida impact rule," id. at 705, the district court certified the above-quoted questions to this Court as ones involving matters of great public importance. See id. at 705-06. This has generated our review today.
Based on the analysis set forth below, we answer the first certified question in the affirmative, quash the Third District's decision in this case, and disapprove Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997). Based upon our answer to the first certified question, we decline to answer the remaining certified questions as we quash the district court's *850 decision below and remand the case for proceedings consistent with this opinion.

ANALYSIS
The application of the "impact rule" in Florida reflects a dichotomy under the law for cases in which the plaintiff is claiming damages for mental pain and anguish. This dichotomy and controlling law was aptly described by the Third District Court of Appeal in Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), which was noted with approval by this Court in Zell v. Meek, 665 So.2d 1048, 1050 n. 1 (Fla.1995):
In Florida, the prerequisites for recovery for negligent infliction of emotional distress differ depending on whether the plaintiff has or has not suffered a physical impact from an external force. If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself. If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be "manifested by physical injury," the plaintiff must be "involved" in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment "within a short time" of the incident.
Eagle-Picher Indus., Inc., 481 So.2d at 526 (citation omitted); see also Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234, 1239 (Fla.2001) (recognizing dichotomy by holding that physical injury is not required where impact occurs by ingestion of food containing a foreign substance because impact rule is inapplicable as ingestion qualifies as the impact); Zell, 665 So.2d at 1050, 1052 (recognizing that a cause of action for psychological trauma exists in Florida in cases involving "some physical impact to a claimant" or in cases "where psychological trauma could be demonstrated to cause a demonstrable physical injury"). The impact rule is the rule of law followed in Florida applicable to cases in which the plaintiff claims mental or emotional damages but has not sustained any physical impact or contact, unless the claim falls within one of the recognized exceptions to the rule. When an impact or touching has occurred the rule has no application.
We have previously stated that for a plaintiff to have endured an impact or contact sufficient to render an action sustainable the "plaintiff may meet rather slight requirements." Zell, 665 So.2d at 1050 n. 1. In so holding, we approved the Third District's statement of the impact requirement in Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985):
The essence of impact, then, it seems, is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body.
Id. at 527, quoted with approval in Zell, 665 So.2d at 1050 n. 1. The Willises assert that the facts involved with the incident in this case establish that Mrs. Willis sustained multiple types of contact sufficient to qualify as an impact giving rise to a valid cause of action for emotional distress. Viewing the facts in a light most favorable to the Willises as we must, see Moore, 475 So.2d at 668, we conclude that the position advanced by the Willises is correct. The deposition testimony of Mrs. Willis establishes that her assailant actually made contact with her left temple with his gun, and that the assailant also made actual physical contact with Mrs. Willis when he demanded that she lift her shirt and he then proceeded to touch her body in an apparent search for money or other belongings. *851 Given our statements in Zell as to what constitutes sufficient physical contact to qualify as an "impact" for purposes of maintaining an action for emotional distress, we hold that the Willises' claim more than satisfies that definition. See Zell, 665 So.2d at 1050 n. 1; see also Eagle-Picher Indus., Inc., 481 So.2d at 517.

CONCLUSION
Based on the foregoing, we answer the first certified question in the affirmative, disapprove the Third District's opinion and decision in Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997), and quash the district court's decision below and remand the case for proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
LEWIS, C.J., specially concurs with an opinion.
PARIENTE, J., concurs with an opinion, in which ANSTEAD, J., concurs.
QUINCE, J., concurs with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
WELLS, J., dissents with an opinion.
CANTERO, J., dissents with an opinion, in which WELLS and BELL, JJ., concur.
LEWIS, C.J., specially concurring.
Although I concur with the result of the majority today that the impact rule has no application in the instant case (and has never had application when touching has occurred) because Mrs. Willis did indeed sustain an impact to her person,[2] I am compelled to specially concur because the analysis of the majority fails to address the many significant challenges that have been mounted by the dissenting opinions with regard to when and why the impact rule applies in certain cases involving mental distress and anguish. I am particularly concerned that while the dissenting opinions consume literally dozen of pages, those opinions fail to acknowledge even once the critical fact that under Florida law, the impact rule does not apply and has never applied to torts which involve impact to or contact with the claimant's person. This is the line that has been established for many years. Instead, the dissents create a contrary interpretation of the impact rule based on what they believe the law should be, rather than how it has been established in Florida. The dissenting opinions further avoid and detract from the primary issue by expounding upon tangential issues such as corroboration of Mrs. Willis's version of the incident, the differences between summary judgment and directed verdict proceedings, verdict forms and the comparative negligence of assailants, and the fact that some other states apply a different form of the impact rule than that which has been adopted in Florida.
Moreover, to the extent that the dissents claim that our longstanding interpretation *852 of the impact rule has created confusion and inconsistent rulings in the lower courts, the only confusion I can detect that has arisen is in connection with those cases in which there has been no contact or no impact. On the other hand, the rule reaffirmed by the majority today has been consistently applied in every district court opinion where there has been contact or an impact, except for oneRuttger, which is the outlier opinion and decision the majority has now disapproved. A logical discussion of what the law should be can only begin with at least an acknowledgement of existing law. The dissents expand upon what the law "should be" to actually suggest that the "impact rule" should be abolished. If the dissent believes the line established in Florida based upon touching or contact versus no contact "makes no sense," dissenting op. of Cantero, J., at 868, maybe it is time to consider simply abolishing the "impact rule" entirely. While I do believe the "impact rule" has a valid place in our jurisprudence when properly applied, we could throw the proverbial "baby out with the bathwater," as the dissent concludes. Indeed, if the dissents' interpretation of the "impact rule" accurately reflected the current state of Florida law, I would most assuredly support abolition of the rule.
To fully understand the rationale for application of the impact rule and its limited exceptions, and to understand that the interpretation of the rule employed by the dissents is inaccurate, it is necessary to review the extensive history of this doctrine. The name of the rule itselfImpactdefines the rule which my good colleagues ignore. The initial discussion of an "impact rule" in Florida can be traced to at least 1893 when this Court was faced with the issue of addressing a claim seeking damages for mental injuries suffered in the absence of contact with the plaintiff's person. In International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893), the plaintiff filed an action against a telegraph company for failing to properly deliver a telegram to him. See id. at 148. As a result of the defendant's mishandling of the telegram, the plaintiff was unaware that his wife was deathly ill and, thus, he was unable to return to Jacksonville where his wife was in the hospital until after her death. See id. This Court reversed a judgment entered in favor of the plaintiff in this non-impact context, noting that in cases in which damages for mental injuries alone are being sought without actual impact to the plaintiff,
mental suffering [h]as never [been] allowed to be considered as an element of damages for which pecuniary compensation could be awarded, except (1) in cases of torts, where there was some physical injury and bodily suffering, in which cases, whether there were any circumstances justifying exemplary damages or not, the mental suffering, incident to, connected with, and flowing directly from the physical injury was permitted to be considered in connection with the physical pain, both taken together, but not the one disconnected from the other; and (2) in cases founded purely in tort, where the negligence was so gross as to reasonably imply malice, or where, from the entire want of care or attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages; and (3) in cases growing out of contract, in the one exceptional case of the breach of a contract to marry.
Id. at 151. In the Court's view, in cases such as that pending, circumstances involving no impact with the plaintiff's person, the plaintiff's only injury"mental suffering and disappointment""is one that soars so exclusively within the realms *853 of spirit land that it is beyond the reach of the courts to deal with, or to compensate." Id. at 152.[3] Thus, Saunders marked the Court's formal recognition that it would not allow recovery for mental suffering alone in circumstances where no physical contact with the claimant had occurred without the plaintiff demonstrating "some physical injury" from which the mental suffering was "incident to, connected with, and flow[ed] directly [there]from." Id. at 151.
The so-called rule was again addressed in the non-impact context in 1950 in our opinion in Kirksey v. Jernigan, 45 So.2d 188 (Fla.1950). In Kirksey, the plaintiff sought compensatory and punitive damages for mental pain and anguish for the wrongful withholding and handling of her child's dead body under a scenario in which there was, again, no physical impact to the claimant. See id. at 189. In our opinion, we reaffirmed a "commit[ment] to the rule . . . that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved." Id. at 189. However, we recognized an exception for cases involving outrageous or intentional conduct, declining to
extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages.
Id. We concluded that the facts in Kirksey satisfied this standard and reversed the lower court's entry of final judgment on demurrer in favor of the defendant. See id. at 190.
The impact rule was next addressed by this Court in 1954 in our opinion in Crane v. Loftin, 70 So.2d 574 (Fla.1954). In Crane, "the plaintiff sought damages for personal injuries alleged to have resulted from fright and mental anguish unaccompanied by direct physical impact or trauma" to the complainant resulting from the defendant's negligent operation of a locomotive. Id. at 575 (emphasis supplied). In our decision affirming the dismissal of the plaintiff's action, we recognized that absent facts in "an action in tort . . . such as to reasonably imply malice, . . . recovery for mental pain and anguish unconnected with direct physical impact or trauma may [not] be authorized." Id. (emphasis supplied). Based on the foregoing, it is clear that in Crane, we formally recognized that the rule announced in Saunders was also applicable in common law tort actions and that either "physical impact or trauma" to the claimant was required to "recover[] for mental pain and anguish." Crane, 70 So.2d at 575 (emphasis supplied). Therefore, after our opinion in Crane, a person could not recover compensatory damages for mental distress or psychiatric injury in the absence of a discernible physical injury or illness flowing from emotional distress or an actual impact, factors expressed disjunctively.
In recent years, we have been repeatedly asked to address the continued vitality of the impact rule, and have consistently responded and reaffirmed that the rule *854 serves as an important safeguard when applied under certain proper circumstances in our judicial system. See Rowell v. Holt, 850 So.2d 474, 478 (Fla.2003). It has been primarily misapplication, misunderstandings, and erroneous extensions of the rule, at times generated by opinions from this Court, that have produced this ongoing litigation. We need look no further than my colleague's dissenting opinion in this case to observe how misapplication of the rule can lead to summary denials of meritorious claims and consequently produce fertile ground for calls for abolishment of the rule entirely. Although this Court has consistently reaffirmed the viability of the rule in Florida, "in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale" of applying the rule, it has created and defined only very narrow exceptions to the applicability of the rule. Id.; see also Gracey v. Eaker, 837 So.2d 348, 351 (Fla.2002) (affirming impact rule in the non-contact context as the law in Florida but holding that it was inapplicable where psychotherapist breached statutory duty of confidentiality); Tanner v. Hartog, 696 So.2d 705, 708 (Fla.1997) (holding that impact rule is inapplicable to a claim for negligent stillbirth); Kush v. Lloyd, 616 So.2d 415, 423 (Fla.1992) (holding that impact rule is inapplicable to a claim for wrongful birth).
Despite the extensive history of the impact rule that has been consistently applied in Florida, the view embodied within the dissenting opinions of my esteemed colleagues would rewrite over one hundred years of Florida law and hold contrary to that precedent by requiring a Florida citizen who has clearly sustained an impact to or unauthorized touching of his or her body to also demonstrate "some physical injury or manifestation" or significant injury to state a viable cause of action sounding in tort, currently a requirement only in non-impact cases. See dissenting op. of Wells, J., at 865; dissenting op. of Cantero, J., at 867. This Court has never required or approved attempts to quantitatively assess the nature or extent of a legal injury produced by a touching or sustained as the result of a physical impact or contact as a threshold for allowing an action to recover for mental distress to proceed. Rather, we have consistently recognized that it is the mere existence of a physical impact or contact that is the criterion by which actions are deemed viable, not the relative force of the impact or contact, nor the size of the bruise or scrape that may result from that contact. This Court made this clear in our decision in Clark v. Choctawhatchee Electric Co-Operative, Inc., 107 So.2d 609 (Fla.1958). In Clark, the Court addressed whether the impact rule barred a plaintiff's negligence claim arising from the plaintiff allegedly sustaining an electrical shock. See id. at 610. In concluding that the impact rule did not present a bar to the plaintiff's claim, the Court noted that "too much emphasis has been placed on the absence from the appellant's body of evidence of trauma such as burns, bruises, or scars." Id. at 612. The Court further noted that "an electrical shock, or trauma, or impact may be administered and not leave an outward sign," and that it was error to "limit[] evidence of trauma to visible bodily injury." Id. The nature or extent of the visible physical damage which results from the touching that occurred is not the proper inquiry in determining whether the claim is sustainable.
Even more disturbing and questionable is the analysis employed by the dissenting justices, which relies on cases that do not involve an impact to arrive at this additional "demonstrative injury" requirement. This new requirement clearly departs from longstanding Florida precedent, which has always required either impact or a physical *855 manifestation of injury. In the instant matter, Mrs. Willis indisputably sustained a touching or impact to her person and, therefore, stated a viable cause of action under Florida law.
For example, one colleague begins his dissent by stating that "we have never applied the [impact] rule without requiring physical injury." Dissenting op. of Cantero, J., at 867. Although this correctly states that when there is no impact, the "impact rule" requires an actual physical injury as a predicate to recovery, but only and exclusively when there is no impact or no touching, it neglects to recognize that the rule only applies in cases which do not involve an unauthorized touching or an impact with the plaintiff's person. In cases, such as the one before us, which do involve a touching, a contact, or an impact to the person, no matter how slight, we historically have never required that Florida citizens also demonstrate a particular physical manifestation of injury to state a viable cause of action. The "impact rule" simply has no application. Rather, in such cases, we have consistently recognized a cause of action without limitation by the "impact rule" and have declined all attempts to assess the extent, significance, or nature of injury that is alleged to have resulted from the impact or touching, as such an assessment is totally unnecessary to factual scenarios that involve impact to the plaintiff. See Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234 (Fla.2001) (holding that the impact rule does not apply to cases where a plaintiff suffers emotional distress as a direct result of the consumption of a contaminated beverage because the ingestion of a food or beverage containing a foreign substance constitutes an impact); Clark v. Choctawhatchee Elec. Coop., Inc., 107 So.2d 609 (Fla.1958). The "impact rule" has application only when there is no impact or no touching, and where there is an absence of impact or contact, we have permitted some exceptions based on the physical manifestation of an injury.
Included within my good friend's discussion of Florida's "physical injury requirement" is a list of cases which are presented as support for the position that this Court has historically required both the manifestation of physical injury and impact to allow recovery for pain and suffering or damages in the nature of emotional distress. However, of all the cases cited to support this, only three actually involved an impact to the person, and any discussion in those cases of a physical injury requirement was exclusively in reference to the "impact rule" in the abstract, which applies solely in cases which do not involve an impact to the person, and absolutely did not apply a rule as advanced by my learned colleagues.
For instance, my colleague is correct that in Food Fair Stores of Florida, Inc. v. Macurda, 93 So.2d 860 (Fla.1957), this Court recognized that "damages will not be awarded for mental suffering absent physical injury." Id. at 861. However, this fails to recognize, acknowledge, or even mention that in making this statement the Court was merely stating the required elements of the impact rule when applicable in Florida but then specifically held that the rule was totally inapplicable to the facts of the case before the Court which involved ingestion of contaminated spinachwhich undoubtedly constitutes an impact. See id. at 862; see also Hagan. Moreover, the case that the Macurda Court referred to and relied on when restating the abstract rule applicable in non-impact cases, Dunahoo v. Bess, 146 Fla. 182, 200 So. 541 (1941), undoubtedly did not involve an impact as it involved a claim for damages resulting from the alleged careless embalming of the body of the plaintiff's deceased wife. See id. at 542. Similarly, in both Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234 (Fla. *856 2001), and Clark v. Choctawhatchee Electric Co-Operative, Inc., 107 So.2d 609 (Fla. 1958), we noted that the "impact rule" is applicable to cases involving no impact, but we then proceeded to specifically hold that the rule did not apply to Hagan and Clark because an impact or touching was present in each case. See Hagan, 804 So.2d at 1237-39, 1241; Clark, 107 So.2d at 612.
A review of the remainder of the cases cited by my colleague in support of the assertion that this Court has "never applied the [impact] rule without requiring physical injury," dissenting op. of Cantero, J., at 867, demonstrates that these cases have no application in this discussion and are completely distinguishable from the instant case in that there was no impact to the person seeking damages for mental anguish or emotional distress. See Kirksey v. Jernigan, 45 So.2d 188 (Fla.1950) (no impact where plaintiff sued undertaker for unlawfully withholding the body of deceased child); Brown v. Cadillac Motor Car Div., 468 So.2d 903 (Fla.1985) (no impact where plaintiff sued for defective automobile equipment that caused the death of his mother); Champion v. Gray, 478 So.2d 17 (Fla.1985) (no impact where plaintiff died from shock and grief after a driver struck and killed the plaintiff's daughter); Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673 (Fla.1995) (no impact where parents sued for negligent mishandling of deceased infant); R.J. v. Humana of Fla., Inc., 652 So.2d 360 (Fla.1995) (no impact where plaintiff sued for misdiagnosis of HIV); Zell v. Meek, 665 So.2d 1048 (Fla.1995) (no impact where plaintiff sued after observing the death of her father caused by a bomb explosion); Tanner v. Hartog, 696 So.2d 705 (Fla.1997) (no impact where parents sued for negligent stillbirth); Time Ins. Co. v. Burger, 712 So.2d 389 (Fla.1998) (no impact where plaintiff sued insurance company for failure to pay medical bills); Gracey v. Eaker, 837 So.2d 348 (Fla.2002) (no impact where plaintiff sued psychotherapist for revealing confidential client information); Rowell v. Holt, 850 So.2d 474 (Fla.2003) (no impact where plaintiff sued for negligent conduct of public defender which resulted in the wrongful pretrial imprisonment of plaintiff); S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317 (Fla.2005) (no impact where plaintiff alleged that the negligence of defendant caused plaintiff to lose custody of his children and parental rights).[4]
Justice Cantero further asserts that "our jurisprudence has created much confusion in the lower courts," dissenting op. at 876, and refers to cases in which the district courts certified questions of great public importance in an effort to bolster his assertion. See dissenting op. of Cantero, J., at 876-77 n. 16. However, a close inspection reveals no such confusion exists when these cases are viewed through the lens of the "impact rule" as it has always *857 existed in Florida; i.e., where there is impact or an unauthorized touching, there is no need to demonstrate physical injury, and where there is no impact or touching, an actual physical injury is required. Only two of the district court cases cited by Justice Cantero (Hagan and the instant case) involved an impact or a touching of the plaintiff's person, and in each of those cases we subsequently held that the lack of physical injury did not bar recovery because contact occurred. See majority op. at 850; Hagan, 804 So.2d at 1241. The remaining district court cases cited by the dissent involved no impact. See Thomas v. OB/GYN Specialists of Palm Beaches, Inc., 889 So.2d 971 (Fla. 4th DCA 2004) (no impact where plaintiff father sued for alleged malpractice which led to loss of a fetus); Abril v. Dep't of Corrections, 884 So.2d 206 (Fla. 2d DCA 2004) (no impact where plaintiff sued for failure to follow confidentiality procedures), approved, No. SC04-1747, ___ So.2d ___, 2007 WL 3024020 (Fla. Oct. 18, 2007); Woodard v. Jupiter Christian Sch., Inc., 913 So.2d 1188 (Fla. 4th DCA 2005) (no impact where plaintiff sued for the revelation of confidential student communications), review granted, 924 So.2d 812 (Fla.2006); Jordan v. Equity Properties & Dev. Co., 661 So.2d 1307 (Fla. 3d DCA 1995) (no impact where the victim of a robbery hit the assailant with a deposit bag).
My good friend also suggests that this Court "certainly had the opportunity in Hagan to hold that the impact rule requires only impact, since only impact was present in that case." Dissenting op. of Cantero, J., at 874. However, this assertion is quite simply illogical because the impact rule does not apply when there is impact to or contact with the claimant's person. Instead, in Hagan we correctly recognized that the ingestion of a contaminated substance constituted an impact, thereby rendering the "impact rule" totally inapplicable and any accompanying demonstrable physical injury requirement inapplicable. 804 So.2d at 1238-39, 1241. Contrary to my colleague's assertion, we did not create an exception to the impact rule in Hagan. Rather, we explicitly recognized that:
As this Court recognized in Tanner, the impact rule does not apply where emotional damages are a "consequence of conduct that itself is a freestanding tort apart from any emotional injury." 696 So.2d at 708 (quoting Kush, 616 So.2d at 415). And, of course, Doyle recognized a cause of action based on the ingestion of a contaminated food since ingestion itself constitutes an impact. Consistent with our opinions and holdings in Tanner and Doyle, we hold that a plaintiff need not prove the existence of a physical injury in order to recover damages for emotional injuries caused by the consumption of a contaminated food or beverage. . . . Further, since we have concluded that there was an impact in the case at hand by the ingestion of a contaminated substance, and the impact rule does not bar the action, we decline to rule on the broader question [of whether to abolish the impact rule].
804 So.2d at 1241 (emphasis supplied). This Court reiterated in Hagan that although the "impact rule" may require demonstrable physical injury when it is applicable, in cases where there is a contact or an impact, such as ingestion in Hagan, or touching a gun to one's head in the present case, the rule simply does not apply.[5] Therefore, although my friend in dissent correctly asserts that the "impact *858 rule" requires a demonstrable physical injury in cases where there is no impact, he fails to recognize, or even acknowledge, that the "impact rule" has absolutely no application in cases which involve contact, touching, or an impact to the plaintiff's person. Instead, he attempts to dismiss our unequivocal statement in Hagan of the law as it has always been in Florida by calling it "merely dictum." Dissenting op. of Cantero, J., at 874.
The dissenting opinions utilize abstract statements of the "impact rule" in and from non-impact cases in an effort to justify their view that Florida law requires a physical manifestation of injury even in cases where it is undisputed that the plaintiff has suffered an impact. I believe that the dissents' focus on cases with inapposite facts (no contact) to reach what they believe to be the preferable rule of law is both faulty and misguided. In my view, the dissents' proposed method of applying a rule that was very clearly designed and intended to pertain only to cases which involve no contact or no impact to the facts of the case before us, which clearly and admittedly involves an impact to Mrs. Willis's person, entirely misconstrues our precedent in this area, misapplies the "impact rule" to factually distinguishable cases in which it has never been applied, and would create a bar that has never before existed to causes of action in Florida. If we are urged to rewrite over a century of Florida law, it should be done openly and with a straightforward approach stating that we are doing so, rather than engaging in an attempt to persuade that we are merely applying our longstanding precedent as it was designed, intended, and has been established, when in fact we are not. In my view, the dissents attempt to do the latter by relying upon a rule of law which has consistently been applied only to non-impact cases to reach the conclusion that a claim which undoubtedly involves impact should be barred, without even so much as acknowledging this critical distinction. In truth, these dissenting assertions amount to little more than straw men which are born of the erroneous interpretation that the impact rule (and its requirement that physical injury be demonstrated) applies in all cases, not just cases where no impact has been sustained by the victim.
Finally, with regard to the holding of the majority, one colleague opines:
Under the conclusions of the per curiam and concurring opinions, any person in Florida other than perhaps a trespasser can now claim that someone touched the person on an owner's premises and that the touching frightened the person so much that the person is entitled to damages for emotional distress, resulting in the premises owner being subject to a jury award for damages against the owner.
Dissenting op. of Wells, J., at 866. However, my colleague is misconstruing the majority's opinion. He fails to recognize, or acknowledge, that the instant matter is before this Court on final summary judgment in favor of the defendants. Therefore, the majority merely concludes that if a review of the facts in a light most favorable to the nonmoving party reveals that the plaintiff has suffered a physical impact or touching, then the claim should not be barred prematurely by misapplication of an erroneous rule of law to those circumstances.[6] Contrary to the assertion of my *859 colleague, the majority opinion should not be construed as commenting on the merits of Mrs. Willis's claim, or as holding that "[Mrs. Willis] is entitled to damages for emotional distress." Dissenting op. of Wells, J., at 866. In addition, the same dissent misconstrues the majority opinion as authorizing "any person in Florida other than perhaps a trespasser" to institute an action for injuries incurred on an owner's property. Id.[7] Again, contrary to his interpretation of the majority opinion, the majority of course recognizes that not just "any person in Florida" can recover in a negligence action but rather that the plaintiff must demonstrate that he or she is owed a duty by the defendant, that the defendant breached that duty, and that such breach resulted in a physical impact or touching of the plaintiff and accompanying intangible damages.
In his dissent, my colleague further incorrectly asserts that "all of our district courts" have held similarly to the Third District's decision in the instant matter. Dissenting op. of Wells, J., at 867. However, a review of the district court decisions upon which he relies for support for this assertion reveals that the analysis in his dissent is not at all supported by those decisions. In Rivers v. Grimsley Oil Co., 842 So.2d 975 (Fla. 2d DCA 2003), the district court made it unmistakably clear that the case did not involve impact with the plaintiff's person. The district court was careful to note that: "The precise issue presented is whether an invitee at a convenience store (1) who is traumatized by a robber but sustains no physical impact or physical injuries in the robbery . . . may allege a cause of action in simple negligence against the store owner." Id. at 977 (emphasis supplied). Similarly, the facts of Davis v. Sun First National Bank of Orlando, 408 So.2d 608 (Fla. 5th DCA 1981), also undoubtedly did not involve an impact or touching of the plaintiff. The Davis decision involved a bank robbery accomplished by the bank robber simply handing the teller a note demanding money. See id. at 609-10. The district court correctly concluded that these circumstances did not qualify as a physical impact, see id. at 610, and, therefore, the reasoning employed therein is not applicable to the case before us, which clearly involves an impact to and the contact with Mrs. Willis's person. The remaining district court decisions relied upon by my colleague in his dissent cannot be said to support his view in any way as they both involve per curiam opinions with no reference whatsoever to the facts of either case. See Jackson v. Sweat, 855 So.2d 1151 (Fla. 1st DCA 2003); Minucci v. United Parcel Service, Inc., 846 So.2d 568 (Fla. 4th DCA 2003). Lastly, two of the four cases cited by my colleague in dissent rely upon the Third District's outlier opinion in Ruttger, a case which we disapprove today. See Jackson, 855 So.2d at 1151; Rivers, 842 So.2d at 977. *860 Based on the foregoing, I voice my agreement with the ultimate result of the majority, but my complete disagreement with the outcome urged and the reasoning employed by the dissenting views. In my view, the historical basis, development, and proper application of the "impact rule" in Florida compels the conclusion that it has no application in cases, such as that before us today, which involve an impact to the plaintiff's person. However, because the majority fails to address the significant challenges to the rule that compels the majority decision today, I am compelled to specially concur.
PARIENTE, J., concurring.
I agree with the majority that in this case Florida's judicially created impact rule, which generally prohibits recovery of emotional distress damages, should not apply because the plaintiff sustained a physical impact. See Rowell v. Holt, 850 So.2d 474, 483 (Fla.2003) (Pariente, J., specially concurring); Gracey v. Eaker, 837 So.2d 348, 358 (Fla.2002) (Pariente, J., concurring).
I have always understood that the presence of an impact makes a showing of physical injury or illness flowing from the emotional distress unnecessary. See Gracey, 837 So.2d at 358 ("The impact rule, as applied in Florida, is that, in the absence of a discernible physical injury or illness flowing from emotional distress or an actual impact, a person cannot recover compensatory damages for mental distress or psychiatric injury.") (Pariente, J., concurring) (emphasis supplied).[8] In other words, if there is an impact, a plaintiff can *861 recover for emotional distress regardless of whether the plaintiff suffered a physical injury. I recognize that after this Court's decision in Crane v. Loftin, 70 So.2d 574 (Fla.1954), some of the language used in our cases and relied on by Justice Cantero in his dissent could be construed to require a plaintiff to demonstrate both a physical impact and a physical injury in order to recover damages for negligent infliction of emotional distress. However, as Chief Justice Lewis points out in his separate opinion, any statements referred to in those cases concern the "impact rule" in the abstract. In any event, the majority now clarifies any ambiguity in our prior decisions.
Clearly, the impact rule does not bar Mrs. Willis from bringing a cause of action in this case. Specifically, the evidence demonstrates that Mrs. Willis was touched against her will when the assailant placed a pistol against her head and also when the assailant "patted down" her exposed body. Mrs. Willis also alleged that as a result of this incident she has received treatment from a psychiatrist, a psychologist, and a general practitioner for anxiety, depression, panic attacks, and post-traumatic stress disorder. Further, Mrs. Willis alleged that she is taking Paxil, Buspar, Wellbutrin, and Zoloft for her condition. According to these allegations, it is clear that Mrs. Willis has suffered significant emotional distress damages. Indeed, the psychologist stated in an affidavit that Mrs. Willis has experienced physical manifestations of the emotional injury and described these manifestations as including sexual dysfunction, peripheral temperature changes, muscle tightening and increased sweat gland activity. Therefore, as the majority correctly concludes, under the facts of this case the impact rule does not preclude recovery of the mental pain and suffering damages alleged.
Although I agree with the result reached by the majority in this case, I write separately to once again express my concerns regarding the vitality of the impact rule as it exists in Florida, and to urge this Court to consider receding from the impact rule as set forth in this Court's precedent. I recognize that this Court has to date declined to recede from the impact rule, but at the same time, the Court has continued to carve out well-meaning exceptions to this rule on a case-by-case basis.[9] *862 This case-by-case approach has resulted in the district courts of appeal continuing to certify questions of great public importance to this Court concerning the applicability of the impact rule under the facts of a particular case. This alone demonstrates the lack of stability and the lack of predictability in this area of the law, and should cause us to consider whether the impact rule is the soundest common law approach to addressing concerns about awarding intangible damages unless a "genuine" injury can be shown.[10]
As I explained in Rowell, the impact rule "reflects an outmoded skepticism for damages resulting from mental injuries." 850 So.2d at 483 (Pariente, J., specially concurring). In fact, Justice Wells' dissent reveals a similar skepticism in that the dissent expresses concern over not being able to corroborate or evaluate Mrs. Willis's veracity about the details of the robbery or even the occurrence of the robbery because she did not suffer a discernible physical injury. However, the trier of fact, which in these cases is often a jury, will be vested with the responsibility of determining the credibility of Mrs. Willis's testimony and the evidence presented in this case. Further, section 90.605 of the Florida Evidence Code operates to guard against giving false testimony in a court proceeding by requiring that each witness "declare that he or she will testify truthfully," and by mandating that each witness take an oath or affirmation to this effect which must be noted in the record. Thus, any testimony given in this case will be subject to the penalties of perjury. Moreover, the fact that there is expert testimony substantiates the seriousness of Mrs. Willis's mental and emotional injuries.
I reiterate my agreement with the Illinois Supreme Court's summary of the primary criticisms of the impact rule:
The requirement [of physical manifestation of emotional distress] is overinclusive because it permits recovery for mental anguish when the suffering accompanies or results in any physical impairment, regardless of how trivial the injury. More importantly, the requirement is underinclusive because it arbitrarily denies court access to persons with valid claims they could prove if permitted to do so.
Additionally, the requirement is defective because it "encourages extravagant pleading and distorted testimony." To continue requiring proof of physical injury when mental suffering may be equally recognizable standing alone would force "victim[s] to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured."
Id. at 483-84 (Pariente, J., specially concurring) (quoting Corgan v. Muehling, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602, 608 (1991)) (alterations in original).
This case is a good example of the practical problems caused by the impact rule's *863 requirement that a plaintiff sustain a physical impact in order to maintain an action for negligent infliction of emotional distress. In this case, if the gun had been placed within an inch of Mrs. Willis's head without touching her, no one would seriously think that the emotional distress accompanying this trauma would be any less severe than that suffered by Mrs. Willis as a result of the gun actually touching her. It seems to me that Justice Cantero recognizes this reality in his dissent when he states that "the Court now allows emotional distress damages even where the distress may be minimal or nonexistent; yet where the damages may be great but no `impact' occurred, the Court would deny them."
But instead of receding from the impact rule, we continue to create case-by-case exceptions. As I stated in Rowell and Gracey, I believe that the traditional foreseeability analysis applicable to negligence claims is the more appropriate framework for a limitation on tort recovery in this state. See generally McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992) ("The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others."). Accordingly, I would abolish the impact rule as applied in Florida and would adopt the traditional foreseeability analysis. As a practical matter, the traditional foreseeability analysis eliminates the arbitrary requirements of the impact rule, which will lead to greater stability and predictability in this area of the law.
ANSTEAD, J., concurs.
QUINCE, J., concurring.
In yet another case involving the Florida Impact Rule the Third District Court of Appeal affirmed a summary judgment entered by the trial court in favor of a hotel after a hotel patron, Mrs. Willis, sued the hotel for negligence in failing to exercise reasonable care to protect her from foreseeable criminal activity. The plaintiff in this case was a patron at the hotel who was told by a hotel security guard, provide by the respondent American Knights Security, to park in a parking lot across the street from the hotel. In addition, the security guard told the woman that the parking lot was safe. However, when the patron opened her car door, a gun was place to her head. The gun actually touched her head, and she was told to empty her pockets. In addition, the patron was told to pull up her shirt and the assailant touched her body in search of money or other things. As a result of this incident, Mrs. Willis could not sleep and spent the night walking the floor in the hotel. The next day she went to an emergency room, and has, since that time, been treated by a psychiatrist and a general practitioner for depression, anxiety, panic attacks, and posttraumatic stress disorder.
On a motion for summary judgment, the defendants argued that Mrs. Willis's cause of action for severe psychological damages was barred by the impact rule. The trial court granted a motion for summary judgment on that basis and the Third District Court of Appeal affirmed. A majority of this Court reverses the summary judgment because the facts, viewed in the light most favorable to the nonmoving party, demonstrates that the gun was in actual contact with the plaintiff's body and the assailant actually touched her body. I agree with this determination because this Court has never attempted to determine the application of the impact rule based on the nature or extent of the physical impact. The outside force, in the words of the Third District, "no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious," can qualify as an impact. Eagle-Picher Industries, Inc. v. Cox, 481 So.2d *864 517, 527 (Fla. 3d DCA 1985). In fact our cases have held that a plaintiff can maintain an action for psychological trauma where the psychological trauma is caused by some physical impact or where the psychological trauma caused a demonstrable physical impact or injury. See, e.g., Gracey v. Eaker, 837 So.2d 348, 355 (Fla. 2002) (indicating that the impact rule bars recovery for emotional distress in the absence of a physical injury or illness flowing from the emotional distress or an actual impact); Zell v. Meek, 665 So.2d 1048 (Fla. 1995) (recognizing that damages for emotional distress may be recoverable where the plaintiff has suffered an impact or where the emotional distress is manifested by physical injury).
Based on the meaning of impact as outlined in these cases, I must conclude that Mrs. Willis's action for emotional distress was not subject to dismissal on a motion for summary judgment.
ANSTEAD and PARIENTE, JJ., concur.
WELLS, J., dissenting.
I dissent because I conclude that the impact rule should be applied under the facts of this case. I would follow the cases from the district courts which have applied the impact rule in similar factual situations. I find that the cases from this Court cited in the per curiam opinion to support reversing the Third District Court of Appeal in this case are cases based on very different factual situations, and they should not be applied to this case. In respect to the case precedent, I substantially rely upon and concur in Justice Cantero's excellent opinion as a reply. I believe that the Court must continue, as it has in the past, to have a gatekeeper role in objectively testing the reliability of claims for emotional distress where the alleged tort does not result in discernible physical injury. This role is necessary in order to maintain trust and confidence that court judgments are not enforcing fictitious claims. It is this role in the Court testing such claims which gave rise to the impact rule as a basis for objective analysis.
I recognize that Chief Justice Lewis, in responding to my dissent, lays great stress repeatedly on this being a summary judgment. However, he fails to point out how the issues will be different on motion for directed verdict or on a motion for judgment notwithstanding the verdict. We have to assume on summary judgment that the record contains all of the evidence available on what happened in the incident in the parking area adjacent to the Holiday Inn and whether Mrs. Willis had a discernible physical injury from an impact. Moreover, neither the per curiam opinion nor the concurring opinions acknowledge that whether a claim is barred by the impact rule has been held by this Court to be an issue of law which is properly considered on a motion to dismiss or motion for summary judgment. Crane v. Loftin, 70 So.2d 574 (Fla.1954) (affirming granting of a motion to dismiss); Gilliam v. Stewart, 291 So.2d 593 (Fla.1974) (affirming a summary judgment); R.J. v. Humana of Florida, Inc., 652 So.2d 360 (Fla.1995) (setting forth what must be alleged in respect to the impact rule as a rule of law on deciding a motion to dismiss).
The evidence set forth in the per curiam opinion was evidence adopted by the district court from the petitioners' brief in the district court. However, it must be noted that this evidence concerning what occurred in the parking lot is "undisputed" because the only evidence concerning the episode is from plaintiff Willis in her deposition. Thus, there is no way to dispute what the per curiam concludes is all that is necessary for the plaintiff to recover emotional damages from these defendants because *865 the cause of action is entirely based upon the uncorroborated statements of the plaintiff.
Justice Lewis says that "after conducting a thorough review of the record [he] perceive[s] no hint of fabrication in Mrs. Willis's version of events." Of course, the very problem is that we have only what Mrs. Willis says to rely upon for any "version of events." We have no objective way to test whether Mrs. Willis is fabricating, and this is the reason this Court's precedent has required that an impact result in some discernible physical injury or manifestation.
There was no evidence of any physical injury or marking of any kind resulting from Mrs. Willis's reported gun touching and patting. The alleged assailant was not identified or ever seen by anyone other than Mrs. Willis. Mrs. Willis only gave a very general description of the assailant. Mrs. Willis did not seek immediate medical treatment.
Q Did you get a look at the person who took your car?
A It happened so fast, I didn't. All I know, he waswhen he shot, he wasI don't know.
Q Do you remember anything about the individual, voice, inflection, height, race, anything?
A Yes, I remember the gun in my face.
Q Other than the gun in your face, do you remember anything else?
A No.
Following the incident in the parking lot, Mrs. Willis spent the night at the Holiday Inn. Then, on the afternoon following the incident, Mrs. Willis returned to her home in Port Orange, Florida. Thereafter, she went to an emergency room, although her testimony was that she could not remember when she first sought or received any medical treatment. (Deposition of Willis, record at 154.) In respect to treatment of Mrs. Willis, the record only contains an affidavit of treatment by a psychologist.
In R.J. v. Humana of Florida, Inc., 652 So.2d 360, 362-63 (Fla.1995), the Court wrote definitively about the impact rule and why this Court decided that it should continue to be applied in Florida.
The impact rule has had a long legal history in this state, beginning with this Court's decision in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893). In essence, the impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992), review denied, 623 So.2d 494 (Fla.1993). As explained by one commentator, the underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims. 1 Thomas M. Cooley, Cooley on Torts 97 (3d ed.1906). As this Court stated in Saunders, compensatory damages for emotional distress are "spiritually intangible," are beyond the limits of judicial action, and should be dealt with through legislative action rather than judicial decisions. 14 So. at 152. Another commentator has stated that the requirement of a physical impact gives courts a guarantee that an injury to a plaintiff is genuine. W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 54, at 363 (5th ed.1984). Further without an impact requirement, defendants would not be sure whom they had injured or where they may have injured a person, thus paralyzing their ability to defend themselves. Id. at 364.

*866 (Emphasis added.) The Court in R.J. continued to recognize the limited exception which the Court had found in the application of the impact rule but then stated:
We reaffirm today our conclusion that the impact rule continued to serve its purpose of assuring the validity of claims for emotional or physic damages, and find that the impact rule should remain part of the law of this state. Consequently we reject R.J.'s request that we abolish the impact rule.
Id. at 363. Though this Court, in the subsequent cases of Rowell v. Holt, 850 So.2d 474 (Fla.2003); Gracey v. Eaker, 837 So.2d 348 (Fla.2002); Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234 (Fla.2001); Tanner v. Hartog, 696 So.2d 705 (Fla. 1997); and Zell v. Meek, 665 So.2d 1048 (Fla.1995), did not apply the impact rule for a variety of reasons, this Court continued to affirm the validity of the impact rule in Florida law.
However, the reasons of Rowell, Gracey, Hagan, Tanner, and Zell for not applying the impact rule are not present here. Rather, this case presents the very real problem of how, without an impact that causes physical injuries, an accused defendant can test or verify the plaintiff's claim.
In Brown v. Cadillac Motor Car Division, 468 So.2d 903, 904 (Fla.1985), this Court expressly stated: "We hold that such psychological trauma must cause a demonstrable physical injury as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist." The demonstrable physical injury part of the rule makes sense in precisely this kind of case. It is illogical that whether there was a touching alone is the determining factor since whether there was a "touching" when there was no demonstrable physical injury is completely as dependent on what the claimant says as the emotional distress damages are dependent on what the claimant says.
Contrary to Justice Pariente's view, the required oath swearing to tell the truth has no more empirical support as a deterrent to fraud in this kind of case presently than it had when the impact rule was adopted. There is plainly a continuing need for trial judges to be the gatekeepers in these kinds of claims.
Under the conclusions of the per curiam and concurring opinions, any person in Florida other than perhaps a trespasser can now claim that someone touched the person on an owner's premises and that the touching frightened the person so much that the person is entitled to damages for emotional distress, resulting in the premises owner being subjected to a jury award for damages against the owner. This decision highlights a problem which the Legislature considered in its 2005 session with our decision in Merrill Crossings Associates v. McDonald, 705 So.2d 560 (Fla.1997). In Merrill Crossings, we held that alleged assailants in situations with facts like those here alleged should not appear on the verdict form so as to have the assailant's comparative negligence assessed. In light of this decision, Merrill Crossings should be reconsidered.
The Third District's decision in Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997), which the per curiam in this case erroneously disapproves, reached a conclusion that is consistent with this Court's R.J. decision. Wagner involved a robbery of hotel guests. The robber put a gun to one guest's back and pushed both of them into a bathroom. Neither guest had any physical injuries from the gun-touching or from being pushed into the bathroom. Wagner was diagnosed by psychologists as having post-traumatic stress syndrome. The Third District reversed the judgment for the *867 plaintiffs, relying upon the holding of this Court's decision in R.J. that "before a plaintiff can receive damages for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained in an impact." R.J., 652 So.2d at 362 (quoting Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992)).
The other district courts which have reviewed robbery-related situations in light of the impact rule have similarly not allowed recovery. Jackson v. Sweat, 855 So.2d 1151 (Fla. 1st DCA 2003) (mental distress from police arrest of patron in a convenience store when she set off burglary alarm); Rivers v. Grimsley Oil Co., 842 So.2d 975, 977 (Fla. 2d DCA 2003) (robbery of store clerk in a convenience store by person armed with either pistol or something that looked like a pistol) ("We can craft no limited and specific exception to the impact doctrine that would recognize a narrow class of claims like Ms. Rivers'. Given the Florida Supreme Court's continued recognition of the impact rule and the rule's importance in maintaining the traditional scope of negligence law, we are not convinced that this is an expansion of negligence law that this court should establish." (Altenbernd, C.J., writing for a unanimous court)); Minucci v. United Parcel Service, Inc., 846 So.2d 568 (Fla. 4th DCA 2003); Davis v. Sun First National Bank, 408 So.2d 608, 609-10 (Fla. 5th DCA 1981) ("We reject appellant's claim that the act of the robber in handing her the `hold up note' constituted `physical impact.'"). Chief Justice Lewis attempts to distinguish the Rivers and Davis cases on the basis that the robber in those cases "traumatized" but did not touch the claimant's person. I do not find that a reading of those cases supports Chief Justice Lewis's view. In fact, the Rivers decision cites approvingly the Third District's Ruttger decision. Further, it is unreasonable and illogical to conclude that one person who is confronted by a robber but untouched by the robber cannot recover for psychological distress of the robbery, while another person who says that she was touched but has no objective manifestation of the touching can recover for psychological distress. Such a rule only leads to causes of action based upon contrived statements about touching rather than upon demonstrable physical injuries as our cases before today have required.
In sum, I join with all of our district courts and dissent from the per curiam decision, which is in conflict with this uniform view and with this Court's holding as set forth in R.J. and in Brown as to the reason for applying the impact rule. I would affirm the decision of the Third District and answer the first certified question in the negative.
CANTERO, J., dissenting.
From my reading of our precedent, today a majority of this Court departs from our oft-stated rule that to recover damages for emotional distress, a plaintiff must demonstrate some physical injury or "manifestation." Although we have fashioned several case-specific exceptions to the impact rule, we have never applied the rule without requiring physical injury. When the impact rule is applied so that the difference between having a cause of action and lacking one depends on whether an armed robber's gun actually touched the victim's head, something is dramatically wrong with the law. Requiring mere physical contact does nothing to further the purposes behind the rule. Indeed, it tears the rule from the purpose behind it: to ensure the authenticity of claims for emotional distress. It renders the rule both over- and under-inclusive, allowing damages for trivial claims of emotional distress while prohibiting recovery on substantial *868 claims that happen to involve no impact. Thus, I would continue to require some physical injury or manifestation. In this case, none has been shown. As I explain below, if we are to eliminate the physical injury requirement, we might as well abrogate the impact rule altogether and allow damages for severe emotional distress. As the majority applies it today, the rule makes no sense.
A. The Physical Injury Requirement
Historically our cases have required a physical injury to allow recovery for emotional distress. See, e.g., Zell v. Meek, 665 So.2d 1048, 1053 n. 7 (Fla.1995) (noting that in International Ocean Telegraph Co. v. Saunders, 32 Fla. 434, 14 So. 148 (1893), our earliest case involving negligent infliction of emotional distress, "we required proof of a concomitant physical injury as a safeguard"); R.J. v. Humana of Fla., Inc., 652 So.2d 360, 362, 364 (Fla.1995) (holding that "damages for emotional harm as a result of a misdiagnosis cannot be recovered without a showing of some physical injury," because "intangible, mental injuries are insufficient to meet the physical injury required under the impact rule"); Brown v. Cadillac Motor Car Div., 468 So.2d 903, 904 (Fla.1985) (refusing to allow recovery for psychological trauma resulting from witnessing a parent's death because of "the requirement that a discernible and demonstrable physical injury must flow from the accident before a cause of action exists"); Clark v. Choctawhatchee Elec. Coop., Inc., 107 So.2d 609, 611-12 (Fla.1958) (allowing plaintiff to recover for an electrical shock because she "could not logically be said to have escaped all injury except to the emotions"); Food Fair Stores of Fla., Inc. v. Macurda, 93 So.2d 860, 861 (Fla.1957) (affirming an award to plaintiffs who found worms in their spinach and suffered from vomiting, abdominal pains, and diarrhea, and acknowledging the rule that damages for mental distress will not be awarded "absent physical injury"); Kirksey v. Jernigan, 45 So.2d 188, 189 (Fla.1950) ("This court is committed to the rule, and we re-affirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved.").
During the past decade, we have consistently included the physical injury requirement as part of our standard definition of the impact rule, which is that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Humana, 652 So.2d at 362 (quoting Reynolds v. State Farm Mut. Auto. Ins. Co., 611 So.2d 1294, 1296 (Fla. 4th DCA 1992)); S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 320 (Fla.2005) ("The impact rule . . . requires that `before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'") (quoting Humana); Rowell v. Holt, 850 So.2d 474, 477-78 (Fla.2003) ("The rule requires that `before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries sustained in an impact.'") (quoting Humana); Gracey v. Eaker, 837 So.2d 348, 355 (Fla.2002) ("The `impact rule' requires that a plaintiff seeking to recover emotional distress damages in a negligence action prove that `the emotional distress . . . flow[s] from physical injuries the plaintiff sustained in an impact [upon his person].'") (quoting Humana); Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234, 1237 (Fla.2001) ("[T]he impact rule requires that before a plaintiff may recover damages for emotional distress, she must demonstrate that the emotional *869 stress suffered flowed from injuries sustained in an impact.") (citing Humana); Time Ins. Co. v. Burger, 712 So.2d 389, 393 (Fla.1998) ("[T]his Court established the impact rule, which holds that in the absence of a discernible physical injury a person cannot recover compensatory damages for mental distress or psychiatric injury."); see also Tanner v. Hartog, 696 So.2d 705, 707 (Fla.1997) ("[T]he impact rule requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional stress suffered must flow from physical injuries the plaintiff sustained in an impact.") (citing Humana).
Thus, this very Court has cited this formulation of the rule no fewer than seven times in the last twelve years. Our decisions have clearly and repeatedly stated the rule as requiring both impact and injury. Therefore, contrary to Chief Justice Lewis's contention that I "would rewrite over one hundred years of Florida law," specially concurring op. at 854, it is the majority that ignores repeated statements of this Court, some as recent as 2005.[11]
As some of our opinions note, there are good reasons behind the rule. The purpose of requiring both an impact and a physical injury is to ensure the authenticity of claims for emotional distress. See Gonzalez v. Metro. Dade County Pub. Health Trust, 651 So.2d 673, 674 (Fla. 1995). The concern, as we have stated it, is that allowing recovery for purely emotional distress, without any physical injury, would open the floodgates for fictitious or speculative claims. Rowell, 850 So.2d at 478; Humana, 652 So.2d at 363. The impact rule limits recovery to those cases where we have the greatest confidence that real injury has occurred, and does so in a predictable and administrable manner.
As we have emphasized, however, the reasons for the rule extend even further:
[T]here is more underlying the impact doctrine than simply problems of proof, fraudulent claims, and excessive litigation. The impact doctrine gives practical recognition to the thought that not every injury which one person may by his negligence inflict upon another should be compensated in money damages. There must be some level of harm which one should absorb without recompense as the price he pays for living in an organized society. *870 Gonzalez, 651 So.2d at 675 (quoting Stewart v. Gilliam, 271 So.2d 466, 477 (Fla. 4th DCA 1972) (Reed, C.J., dissenting), quashed, 291 So.2d 593 (Fla.1974)).
Other states, too, have required a physical injury or manifestation. See, e.g., Hinsberger v. State, 53 P.3d 568, 571 (Alaska 2002); Pierce v. Casas Adobes Baptist Church, 162 Ariz. 269, 782 P.2d 1162, 1165 (1989); FMC Corp. v. Helton, 360 Ark. 465, 202 S.W.3d 490 (2005); Garrison v. Med. Ctr. of Delaware, 581 A.2d 288, 293 (Del.1989); Lee v. State Farm Mut. Ins. Co., 272 Ga. 583, 533 S.E.2d 82, 84 (2000); Hathaway v. Krumery, 110 Idaho 515, 716 P.2d 1287 (1986); Clark v. Estate of Rice, 653 N.W.2d 166, 169-70 (Iowa 2002); Grube v. Union Pac. R.R. Co., 256 Kan. 519, 886 P.2d 845, 848 (1994); Wood v. Wyeth-Ayerst Labs., 82 S.W.3d 849, 852 (Ky.2002); Vance v. Vance, 286 Md. 490, 408 A.2d 728, 732-34 (1979); Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 823 N.E.2d 1249, 1253-54 (2005); Henry v. Dow Chem. Co., 473 Mich. 63, 701 N.W.2d 684, 692 (2005); Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764 (Minn.2005); Paz v. Brush Engineered Materials, Inc., 949 So.2d 1, 4-5 (Miss. 2007); Palmer v. Nan King Rest., Inc., 147 N.H. 681, 798 A.2d 583, 586 (2002); Johnson v. State, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590, 591-92 (1975); Doner v. Ed Adams Contracting, Inc., 208 A.D.2d 1072, 617 N.Y.S.2d 565 (N.Y.App.Div.1994); Hougum v. Valley Mem'l Homes, 574 N.W.2d 812, 819 (N.D. 1998); Ellington v. Coca Cola Bottling Co. of Tulsa, Inc., 717 P.2d 109, 110-11 (Okla. 1986); Simons v. Beard, 188 Or.App. 370, 72 P.3d 96, 99 (2003); Rustvold v. Taylor, 171 Or.App. 128, 14 P.3d 675 (2000); Houston v. Texaco, Inc., 371 Pa.Super. 399, 538 A.2d 502, 504 (1988); Perrotti v. Gonicberg, 877 A.2d 631, 637-38 (R.I.2005); Kinard v. Augusta Sash & Door Co., 286 S.C. 579, 336 S.E.2d 465, 466-67 (1985); Wright v. Coca-Cola Bottling Co. of Cent. S. Dakota, Inc., 414 N.W.2d 608 (S.D. 1987); Bulala v. Boyd, 239 Va. 218, 389 S.E.2d 670, 674 n. 1 (1990);[12] Courts retain the physical injury requirement because mental anguish without physical consequences is "so temporary, so evanescent, and so relatively harmless that the task of compensating for it would unduly burden defendants and the courts." Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171, 178 (1982).
In fact, Justice Pariente has conceded at least until todaythat the physical injury requirement remains the majority rule. See Gracey, 837 So.2d at 358 n. 15 (Pariente, J., concurring) (quoting Scott D. Marrs, Mind Over Body: Trends Regarding the Physical Injury Requirement in Negligent Infliction of Emotional Distress and "Fear of Disease" Cases, 28 Tort & Ins. L.J. 1, 39 (1992)); see also Gonzalez, 651 So.2d at 674 ("Although the majority of jurisdictions do not require physical impact, they nevertheless still require a physical injury for recovery for negligent infliction of emotional distress."); Humana, 652 So.2d at 365 (noting that a "more reasonable rule emerged that now is recognized in more than thirty states," which *871 does not require impact but requires actual injury) (Kogan, J., specially concurring); Clark, 653 N.W.2d at 170 (stating that "most other jurisdictions . . . have refused to recognize an independent claim for emotional distress based on negligence without some physical harm"); Larsen v. Banner Health Sys., 81 P.3d 196, 202 (Wyo.2003) (stating that "most jurisdictions still require proof of a physical manifestation of emotional distress"). As we noted in Gonzalez, "even commentators acknowledge that `cases will obviously be infrequent in which `mental disturbance,' not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case.'" 651 So.2d at 676 (quoting Prosser and Keeton on the Law of Torts § 54, at 362 (5th ed.1984)).

B. Have We Eliminated the Requirement?
The majority concludes that, so long as there is an impact, we no longer require a physical injury. See majority op. at 850. The majority cites Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), and Zell v. Meek, 665 So.2d 1048 (Fla.1995), as cases holding that emotional distress damages may be based on either impact or injury. Both cases, however, required some physical injury or manifestation. In both cases, physical injury had been demonstrated.
Cox is not a case from this Court, but from the Third District. In Cox, the plaintiff sought recovery for mental anguish caused by the increased risk of cancer resulting from the inhalation of asbestos fibers and his subsequent contraction of asbestosis. The district court held that inhalation of asbestos fibers, although involving only slight physical contact, nevertheless constituted an impact: "The essence of impact, then, it seems, is that the outside force, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body." 481 So.2d at 527. The majority seizes on a quote from Cox where the court stated: "If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely from the impact itself." Cox, 481 So.2d at 526. Read in isolation, this quote may suggest that an impact alone suffices to sustain a cause action for emotional distress. Such a reading, however, ignores the district court's lengthy analysis of Florida's physical injury requirement later in the opinion:
Having determined that inhalation of asbestos satisfies the impact rule, and that, therefore, the plaintiff need not physically manifest his alleged emotional distress, we must still determine if and when recovery is available for fear of cancer. . . .
. . . [S]everal courts have required that "fear of" claims be available only to those who have suffered a physical injury. . . .

The physical injury requirement is consistent with Florida law, necessary and fair. Millions of people have been exposed to asbestos. Permitting an action for fear of cancer where there has been no physical injury from the asbestos would likely devastate the court system as well as the defendant manufacturers. Imposing a requirement that there be a physical injury as a predicate for recovery . . . is not an arbitrary act. . . .
. . . In short, the physical injury requirement will insure that the claims permitted are only the most genuine.

. . . .
. . . The stringent requirement of both impact and injury for a "fear of" claim keeps the [floodgates] intact.
*872 Cox, 481 So.2d at 527-29 (emphasis added).[13] The court stated that although the inhalation of asbestos fibers constitutes an impact, that alone is insufficient to sustain a cause of action for emotional distress. However, because the plaintiff also suffered from asbestosis, the illness "provided him with a chronic, painful and concrete reminder that he had been injuriously exposed to a substantial amount of asbestos, a reminder which may both qualitatively and quantitatively intensify his fear [of contracting cancer]." Id. at 529. Because there was both impact (inhalation of fibers) and injury (asbestosis), the district court permitted recovery.
More on point is the Third District's subsequent application of the rule in Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177 (Fla. 3d DCA 1997). That case presented almost identical facts. The plaintiff was robbed at a hotel. The assailant accosted the plaintiff just outside his room, forced him into his daughter's room, and then pushed both him and his daughter into the bathroom. As in this case, then, there was impact (the push into the bathroom) but no injury. Quoting our decision in Humana, the court stated the rule as "requir[ing] that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." Id. at 1178 (quoting 652 So.2d at 362). The court denied recovery. Id. If we are going to rely on a district court decision, certainly Wagner is more analogous than Cox.
The majority also relies on Zell for the rule that once an impact occurs, a plaintiff is not required to demonstrate physical injury. Our opinion in Zell, however, is replete with references to Florida's physical injury requirement. In Zell, after witnessing her father's death as a result of a bomb that exploded in their unit, the plaintiff sued an apartment complex for negligent infliction of emotional distress. Although the plaintiff was not physically injured in the blast, we permitted recovery because she suffered physical manifestations of her mental anguish following the incident.
In Zell we applied the "bystander rule," which permits recovery for emotional distress absent an actual impact if a plaintiff can demonstrate physical injuries resulting from the mental anguish of witnessing the death or injury of a loved one. We first adopted the bystander rule in Champion v. Gray, 478 So.2d 17 (Fla.1985), where the plaintiff's wife died of shock after witnessing her daughter killed by a drunk driver. As we explained in Zell, "prior to Champion, Florida adhered strictly to a requirement that some physical impact to a claimant must be alleged and demonstrated before the claimant could recover damages for personal injury. This rule is referred to as the impact rule." Zell, 665 So.2d at 1050. In Champion, however, we "retreated from our strict adherence to the impact rule and recognized for the first time a negligence action for physical injuries occurring without an actual impact." Id. at 1052 (emphasis added). We permitted recovery in Zell because expert medical testimony linked the plaintiff's emotional distress to physical impairment of her stomach area, pain below her rib cage, an ulcer, blockage of her esophagus, joint pain, and insomnia.
Although Champion, Zell, and the "bystander" line of cases permit recovery for emotional distress without an impact, they clearly continue to require a physical injury or manifestation:

*873 [W]e rejected the impact rule to the extent that we held that no impact need be shown where psychological trauma could be demonstrated to cause a demonstrable physical injury, but we retained the rule as a bar to psychic injuries resulting from such trauma. Of course, in addition to the requirement of a physical injury, we limited the class of claimants to those "who, because of [their] relationship to the [directly] injured party and [their] involvement in the event causing the injury, [are] foreseeably injured."
. . . .
The essence of our holding in Champion was to recognize a claim where an actual physical injury could be demonstrated by psychic trauma. . . .
. . . .
. . . . [T]he elements required to allege a cause of action for negligent infliction of emotional distress [are]: (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person.
Zell, 665 So.2d at 1052-1054 (emphasis added) (footnotes omitted) (citations omitted). Thus, we have relaxed the rule to permit recovery where there is physical injury but no impact, but not where the converse is true.
We reached a similar result in Gracey, where we described the impact rule as having a "`hybrid' nature, requiring either impact upon one's person or, in certain situations, at a minimum the manifestation of emotional distress in the form of a discernible physical injury or illness." 837 So.2d at 355. But we did not mean that impact without physical injury suffices. In the preceding sentence, we reiterated that "[t]he `impact rule' requires that a plaintiff seeking to recover emotional distress damages in a negligence action prove that that `the emotional distress . . . flow[s] from physical injuries sustained in an impact [upon his person].'" Id. (quoting Humana, 652 So.2d at 362) (emphasis added) (alterations in original). We described the rule as a "hybrid" not because it requires either impact or physical injury, but because in certain bystander cases it allows recovery based on physical injury alone. See Zell, 665 So.2d at 1052 (noting that Champion "retreated from our strict adherence to the impact rule" in those limited circumstances); Champion, 478 So.2d at 18 (holding that a bystander closely related to the directly injured person can recover upon a showing of "significant discernible physical injury"). The case from which Gracey took the "hybrid" languageKush v. Lloyd, 616 So.2d 415 (Fla.1992)made clear that it was referring to the bystander exception, not declaring that impact and injury were alternative paths to recovery. Id. at 422 n. 4. Gracey was also referring to the bystander exception, as evidenced by its use of Champion's phrase, "discernible physical injury," and its caveat that physical injury without impact is sufficient only "in certain situations." 837 So.2d at 355. Nothing in Gracey suggested the converse: that impact without physical injury is sufficient. Indeed, our quotation from Humana directly stated that, to satisfy the rule, the impact must cause physical injury.[14]
*874 In the one other case the majority cites for the elimination of the physical injury requirement, see majority op. at 850, we actually found the impact rule inapplicable. Hagan held "that the impact rule does not apply to cases where a plaintiff suffers emotional distress as a direct result of the consumption of a contaminated beverage." 804 So.2d at 1236. Thus, any mention of the impact rule in Hagan was merely dictum. Presumably, we did not intend Hagan to change a rule that we were not even applying. At any rate, Hagan faithfully stated the rule as requiring physical injury. See id. at 1237 (explaining that the impact rule requires the plaintiff to demonstrate "that the emotional stress suffered flowed from injuries sustained in an impact") (citing Humana, 652 So.2d at 362).[15]
We certainly had the opportunity in Hagan to hold that the impact rule requires only impact, since only impact was present in that case. The plaintiffs had ingested a bottle of Coca-Cola that apparently contained a condom (later determined to be mold). Impact was clear because our previous cases held that ingesting a foreign substance constitutes an impact. See Doyle v. Pillsbury Co., 476 So.2d 1271, 1272 (Fla.1985). But it was also undisputed that the plaintiff had suffered no physical injury. We held in the plaintiffs' favor, but instead of holding that no physical injury was required to recover damages for emotional distress, we held "that the impact rule does not apply to cases involving the ingestion of contaminated substances." Hagan, 804 So.2d at 1239. As we explained: "This ingestion requirement is grounded upon foreseeability rather than the impact rule. The public has become accustomed to believing in and relying on the fact that packaged foods are fit for consumption." Id. at 1239 (quoting Doyle, 476 So.2d at 1272). Because we deemed the impact rule inapplicable to ingestion cases, we reasoned that "any discussion as to the requirement for a physical injury would have been unnecessary based upon our holding that the impact rule did not apply." Id. at 1239. The strong implication of this languageindeed, of the entire Hagan decisionis that when the impact rule does apply, there continues to be a "requirement for a physical injury." Id. Hagan did not hold that the ingestion of food (which supplies the necessary impact) satisfies the rule. Rather, it held that "the impact rule does not apply" in such cases. Id. at 1239 (emphasis added). Had we meant to hold that mere ingestion satisfied the rule, we would not have said that the rule "does not apply," and we certainly would not have restated the rule as requiring that "before a plaintiff may recover damages for emotional distress, she must demonstrate that the emotional stress suffered flowed from injuries sustained in an impact." Id. at 1237.
In his separate opinion, the Chief Justice cites Crane v. Loftin, 70 So.2d 574 (Fla.1954), as the case where we first held that emotional distress damages could be based on either impact or injury. Specially concurring op. at 853. There are two problems with relying on Crane, however. First, Crane denied recovery to the plaintiff, whose claim was based solely on "fright and mental anguish unaccompanied by direct physical impact or trauma." 70 So.2d at 575. Therefore, any implication that damages could be recovered where only impact, but no physical injury, occurred, was dictum. Second, the non-binding nature of the statement is proven by *875 our subsequent statements of the rule, which, as I noted above, repeatedly require physical injury. See Humana, 652 So.2d at 364 ("[M]ental injuries are insufficient to meet the physical injury required under the impact rule."); see also Welker, 908 So.2d 317, 320; Rowell, 850 So.2d at 477-78; Burger, 712 So.2d at 393; Tanner, 696 So.2d at 707; Brown, 468 So.2d at 904; Clark, 107 So.2d at 611-12; Macurda, 93 So.2d at 861 (all noting the physical injury requirement).
The Chief Justice also relies on our holding in Macurda, 93 So.2d at 860. Specially concurring op. at 855. Macurda involved plaintiffs who ingested a can of worm-infested spinach and subsequently suffered fits of vomiting and diarrhea. The spinach company argued that the physical symptoms were the result of psychological trauma, rather than actual food contamination. Far from rejecting the impact rule's physical injury requirements, we stated that the requirement was "sound but inapplicable" because the "jury heard evidence from which they could properly infer" that the physical symptoms were caused by ingestion of the worms. 93 So.2d at 862. In Macurda, we noted that the plaintiffs exhibited physical manifestations following ingestion of a contaminated substance. Recovery for emotional distress under these circumstances is consistent with our traditional application of the impact rule.
The Chief Justice also relies on our decision in Clark, 107 So.2d at 609, as supporting the rule that once an impact occurs, no physical injury is required to claim emotional damages. Specially concurring op. at 16. But that case did not go so far. In Clark, the plaintiff suffered an electric shock due to an electric company's negligent repair of high-voltage power cables. The central issue was not whether physical injury occurred, but whether the absence of visible bodily marks from the electric shock precluded a finding of physical injury. We held that it was error to "limit[] evidence of trauma to visible bodily injury." 107 So.2d at 612. Clark did not abrogate the physical injury requirement; it simply acknowledged that physical injury may occur without leaving a mark. Clark specifically stated that "we do not . . . intend to recede from the rule" requiring physical injury to recover for emotional distress damages. Id. at 611.
Granted, our definition of the required physical injury has evolved: while we previously demanded that a physical injury produce the emotional distress, we now require only that the emotional distress produce some "discernible physical injury" or some "physical manifestation." See Champion, 478 So.2d at 20 ("[A] claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma. . . ."); Brown, 468 So.2d at 904 ("[P]sychological trauma must cause a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment. . . ."). The fact remains, however, that, until now, in no case where we have actually applied the rule have we allowed emotional distress damages without proof of some physical manifestation or injury.
We have never receded from the cases requiring physical injury, and we do not recede from our cases sub silentio. See Puryear v. State, 810 So.2d 901, 905-06 (Fla.2002) (warning that the Court does not overrule itself sub silentio, and where a court encounters an express holding from the Supreme Court on a specific issue and subsequent contrary dictum on the same issue, the court should apply the express holding until the Supreme Court specifically recedes from it). Therefore, our many prior cases requiring physical injury remain good law. I dissent from discarding that requirement today.

*876 C. Exceptions to the Rule
No doubt, we have recently created many exceptions to the impact rule, which are so specific that they were apparently designed to prevent application of the rule in the particular circumstances involved. See, e.g., Rowell, 850 So.2d 474 (creating an exception for emotional distress resulting from legal malpractice that causes further imprisonment); Gracey, 837 So.2d 348 (creating an exception for emotional distress resulting from a psychotherapist's breach of confidentiality); Hagan, 804 So.2d at 1239 (creating an exception for ingestion of a contaminated food or beverage); Tanner, 696 So.2d 705 (creating an exception for emotional distress resulting from a stillbirth); Gonzalez, 651 So.2d 673 (creating an exception for emotional distress resulting from the negligent handling of a dead body); Kush, 616 So.2d 415 (creating an exception for emotional distress resulting from the failure to diagnose an inheritable genetic impairment). Essentially, we have created exceptions whenever we felt that application of the rule would be unjust.
In cases that do not involve an exception, however, we have continued to require physical injury. Unlike cases in which we have recognized an exception to the rule, this case falls squarely within it. The majority does not abrogate the rule, but instead applies a watered-down version that requires impact but no physical injury. The circumstances of this case aptly show the arbitrariness of such a rule. Under the majority's approach, the plaintiff may recover damages for emotional distress only because the perpetrator's gun happened to touch her forehead. Yet in a case like Jordan v. Equity Properties & Development. Co., 661 So.2d 1307, 1308 (Fla. 3d DCA 1995), where the plaintiff also was robbed, recovery would be questionable because the robber came very close but did not actually touch the plaintiff (although the plaintiff did hit the assailant). But recovery should not depend on such a fortuity. The physical injury requirement at least has the virtue of permitting substantial claims and weeding out those that, while perhaps legitimate, represent a "level of harm which one should absorb without recompense as the price he pays for living in an organized society." Gonzalez, 651 So.2d at 675 (quoting Stewart, 271 So.2d at 477).

D. A New Rule
I cannot agree with the majority's emasculation of the impact rule. If we are not to require some physical manifestation, as historically we have and as most states still do, then we should discard the rule. I agree with Justice Pariente to the extent that she argues for a more workable one. As it is, our jurisprudence has created much confusion in the lower courts. During the last decade, no less than nine times district courts have certified questions to us regarding the rule's application or continued vitality.[16] To bring an end to this *877 confusion, while also preserving the screening function that the impact rule sought to serve, I would allow emotional distress damages when the plaintiff can prove, by clear and convincing evidence, that she has suffered severe emotional distress. Such severe emotional distress must have been foreseeable. See, e.g., Sacco v. High Country Indep. Press, Inc., 271 Mont. 209, 896 P.2d 411, 425-26 (1995). Also, the distress should be objectively reasonable. Emotional distress damages should be permitted "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Camper v. Minor, 915 S.W.2d 437, 446 (Tenn.1996) (quoting Rodrigues v. State, 52 Haw. 156, 472 P.2d 509, 521 (1970)). I would also require expert testimony or scientific proof to establish the severity of the distress. See id. ("[T]he claimed injury or impairment must be supported by expert medical or scientific proof."); see also Bass v. Nooney Co., 646 S.W.2d 765, 772-73 (Mo.1983) ("[T]he emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant."); O'Donnell v. HCA Health Servs. of N.H., Inc., 152 N.H. 608, 883 A.2d 319, 324 (2005) ("Though the plaintiffs claim great suffering, we have held that expert testimony is required to recover damages for negligent infliction of emotional distress.").
The majority's requirement of an "impact," no matter how small, without any physical injury or manifestation, tears the rule from the policy behind it: to ensure the authenticity of claims. The Court now allows emotional distress damages even where the distress may be minimal or nonexistent; yet where the damages may be great but no "impact" occurred, the Court would deny them. We should either continue to apply the physical injury requirement, which better implements the policy behind the rule, or scrap the rule and allow damages for clear and convincing evidence of severe emotional distress.
I therefore respectfully dissent.
WELLS and BELL, JJ., concur.
NOTES
[1] The summary judgment was entered in favor of the defendants and, therefore, the district court appropriately considered the facts as presented by the appellants, concluding that they "fairly describe[d] the record evidence in the required light most favorable to [the plaintiffs'] position." Willis, 881 So.2d at 704.
[2] My colleague, in his dissenting opinion, contends that the evidence set forth in the majority decision with regard to the attack suffered by Mrs. Willis, although undisputed, is "uncorroborated." Dissenting op. of Wells, J., at 865. However, "corroboration" is not necessary in the summary judgment posture, and it is clear from the record that Mrs. Willis's car, and all of her belongings therein, were in fact stolen. Moreover, after conducting a thorough review of the record I perceive no hint of fabrication in Mrs. Willis's version of events, especially when this Court must view the facts in a light most favorable to her as the nonmoving party. See Moore, 475 So.2d at 668. In his dissent, my colleague cites only testimony of Mrs. Willis that was elicited by the defense, and takes that testimony completely out of context, in an effort to bolster his argument. Such a view of the record is contrary to well-established appellate principles.
[3] It should be noted that although the Court did not explicitly find that a contract existed between the plaintiff and the defendant, it did appear to base its holding in part on the fact that it viewed the plaintiff's claim as based partially in contract: "In the case under consideration, the plaintiff's suit, though sounding in tort, is for compensation only, for the breach by the defendant telegraph company of its contract promptly to deliver a telegram summoning him to the deathbed of his wife." Saunders, 14 So. at 152.
[4] The string citation to cases from other jurisdictions in support of the assertion that a physical injury or manifestation is required even where there has been an impact to the plaintiff, see dissenting op. of Cantero, J., at 870, is similarly misguided because even some of those cases did not involve a touching of, or impact to, the plaintiff. See, e.g., FMC Corp. v. Helton, 360 Ark. 465, 202 S.W.3d 490 (2005) (no impact where defendants improperly sprayed plaintiffs' wheat crops with an insecticide); Vance v. Vance, 286 Md. 490, 408 A.2d 728 (1979) (no impact where husband failed to advise wife that their marriage was void); Engler v. Illinois Farmers Ins. Co., 706 N.W.2d 764 (Minn.2005) (no impact where mother witnessed a car striking her child); Johnson v. State, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975) (no impact where plaintiff was misinformed that her mother had died). Moreover, mention to other states that have required both an impact and a physical injury to recover for mental distress is surprising because this has never been the standard under Florida law.
[5] Even the United States Supreme Court has recognized that under the case law of certain states, a plaintiff need not demonstrate a physical injury in order to recover for emotional distress where a physical impact has occurred. See Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 547, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) ("Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendant's conduct." (emphasis supplied)).
[6] I take issue with my colleague's approach of viewing the facts in a light most favorable to the moving party in determining whether to approve an entry of summary judgment. Such an approach is directly contrary to and disregards long-established case law dictating that, when reviewing the entry of summary judgment, the record is to be viewed in the light most favorable to the nonmoving party. See Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256, 259 (Fla.2002). Under this standard, when a nonmoving party such as Mrs. Willis seeks damages for emotional distress, and the threshold requirement of an impact has been met, an appellate court has a duty to reverse the entry of summary judgment, regardless of whether the court agrees with the extant law.
[7] A learned colleague also presents a similar faulty argument when he contends that "today's decision grants every plaintiff ever exposed to asbestos fibers a prima facie case for negligent infliction of emotional distress." Dissenting op. of Cantero, J., at 872 n. 13. These assertions that "the sky is falling" amount to little more than scare tactics without support in the law.
[8] In his dissent, Justice Cantero brought to my attention my statement in Gracey that "a majority of jurisdictions continue to adhere to the traditional rule requiring some form of physical injury." Gracey, 837 So.2d at 358 n. 15 (Pariente, J., concurring). This statement was taken from the conclusion of a law review article in which the author used "physical injury" as a short-hand reference to "physical injury," "physical impact," and "physical manifestation." See Scott D. Marrs, Mind Over Body: Trends Regarding the Physical Injury Requirement in Negligent Infliction of Emotional Distress and "Fear of Disease" Cases, 28 Tort & Ins. L.J. 1, 39 (1992). Specifically, the author noted that "[a]n ebbing majority of jurisdictions . . . require some form of `physical injury,' `physical impact,' or `physical manifestation' as a prerequisite to the recovery of [negligent infliction of emotion distress] damages." Id. at 1. Thus, even this statement from the law review article shows how the requirement has been stated as either a physical injury or a physical impact. My review of this article and cases cited in other articles reveals the confusion that exists in many states as to whether the presence of an impact removes the case from the application of the impact rule (perhaps better stated as the "no-impact" rule). I have read the cases cited in Justice Cantero's dissent and have concluded that it is impossible to determine whether a majority of jurisdictions indeed require a physical injury even in the presence of an impact. As noted by Chief Justice Lewis in his special concurrence, many of the cases cited by Justice Cantero discuss the impact rule in situations in which there is no physical impact to the plaintiff. See, e.g., Engler v. Illinois Farmers Ins. Co., 706 N.W.2d 764 (Minn.2005) (bystander case). Other cases cited by Justice Cantero involve a special type of tort. See, e.g., Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods., 82 S.W.3d 849, 852 (Ky.2002) (holding that physical injury is required, even with a physical impact, in cases involving exposure to toxic substances); Houston v. Texaco, Inc., 371 Pa.Super. 399, 538 A.2d 502, 504-05 (1988) (holding that physical injuries were required in a case involving contamination of a plaintiff's water well). Further, cases within the same jurisdiction fail to completely iterate the requirements of the impact rule in line with previous cases in the same jurisdiction, such as in Mississippi, compare Paz v. Brush Engineered Materials, Inc., 949 So.2d 1, 4 (Miss.2007) ("In such a case of ordinary negligence a plaintiff may not recover damages for emotional distress without showing a physical manifestation of injury or demonstrable harm.") with Adams v. U.S. Homecrafters, Inc., 744 So.2d 736, 743 (Miss.1999) ("Our language in the previously cited cases, adopting the term `demonstrable harm' in place of `physical injury,' indicates that the proof may solely consist of evidence of a mental injury without physical manifestation.") (emphasis supplied), Pennsylvania, compare Shumosky v. Lutheran Welfare Services of Northeastern Pa., Inc., 784 A.2d 196, 199-200 (Pa.Super.2001) (defining original impact rule as precluding recovery for mental distress unless "accompanied by physical injury or physical impact," and holding that mental distress may be recovered under either "the impact rule, the zone of danger rule or the bystander rule") with Houston, 538 A.2d at 505 (holding that physical injuries were required in a case involving contamination of a plaintiff's water well), and Kentucky. Compare Steel Technologies, Inc. v. Congleton, No. 2005-SC-000551-DG, 234 S.W.3d 920, 928-29, 2007 WL 1790599, *6-7 (Ky. June 21, 2007) (holding that impact rule is satisfied, in a case involving an auto collision, by physical impact or physical injury, so long as the mental distress is caused by and precedes the physical contact) with Wood, 82 S.W.3d at 852 (holding that physical injury is required, even with a physical impact, in cases involving exposure to toxic substances).
[9] Most recently, in Rowell, we held that the impact rule did not preclude recovery of emotional distress damages when an attorney's negligence resulted in his client's wrongful pretrial incarceration. 850 So.2d at 481; see also Gracey, 837 So.2d at 356-57 (concluding that the impact rule did not bar recovery of emotional distress damages arising from a psychotherapist's breach of the statutory duty of confidentiality); Tanner v. Hartog, 696 So.2d 705 (Fla.1997) (concluding that the impact rule did not preclude recovery of emotional distress damages resulting from a negligent stillbirth). In Rowell, we determined that an exception to the impact rule was warranted under the facts of that case because the attorney "could doubtlessly foresee" that his actions "would result in significant emotional distress." 850 So.2d at 480.
[10] The Fourth District certified a question in Woodard v. Jupiter Christian School, Inc., 913 So.2d 1188 (Fla. 4th DCA 2005), review granted, 924 So.2d 812 (Fla.2006), concerning the issue of whether the impact rule precludes a claim for negligent infliction of emotional distress arising out of a breach of confidential information provided to a school chaplain. We also have recently decided the question certified by the Second District in Abril v. Department of Corrections, 884 So.2d 206 (Fla. 2d DCA 2004), approved, No. SC04-1747, ___ So.2d ___, 2007 WL 3024020 (Fla. Oct. 18, 2007), on the issue of whether the impact rule precludes a claim for negligent infliction of emotional distress resulting from a clinical laboratory's breach of a statutory duty of privacy and confidentiality regarding the disclosure of HIV testing information.
[11] Both Chief Justice Lewis and Justice Pariente, in their separate opinions, suggest that our statements in these cases were dicta. Essentially, they argue that we did not mean what we said in Humana, 652 So.2d at 362, when we stated that the impact rule requires "physical injuries sustained in an impact"; we did not mean what we said when we repeated the rule in Tanner, 696 So.2d at 707; we did not mean what we said when we repeated it in Burger, 712 So.2d at 393; and we did not mean what we said when we repeated it over and over in Hagan, 804 So.2d at 1237, Gracey, 837 So.2d at 355, Rowell, 850 So.2d at 477-78, and Welker, 908 So.2d at 320. This raises a question: if we did not mean itthat is, if it was only dictum in every one of these caseswhy did we keep stating it as the rule over and over again? Certainly, several district court of appeal opinions believed we did mean it and tried to faithfully apply the rule as we had repeatedly stated it. See, e.g., Woodard v. Jupiter Christian School, Inc., 913 So.2d 1188, 1190 (Fla. 4th DCA 2005) (citing the rule as stated in Welker and applying it to dissemination of information supplied to a school counselor), review granted, 924 So.2d 812 (Fla.2006); St. Joseph's Hosp. v. Cowart, 891 So.2d 1039, 1043 (Fla. 2d DCA 2004) (citing the rule as stated in Humana and applying it to a patient who was bitten by a spider in a hospital); Ruttger Hotel Corp. v. Wagner, 691 So.2d 1177, 1178 (Fla. 3d DCA 1997) (citing the rule as stated in Humana and applying it to a victim of a robbery who was touched, but not injured, by the robber); Jordan v. Equity Props. & Dev. Co., 661 So.2d 1307, 1308 (Fla. 3d DCA 1995) (citing the rule as stated in Humana and applying it to a victim of a robbery who hit the assailant in the chest and face).
[12] Some of these states do recognize narrow exceptions to the physical injury requirement. A handful of other states have physical injury requirements with broader exceptions. See, e.g., Wal-Mart Stores, Inc. v. Bowers, 752 So.2d 1201, 1203 (Ala.1999) (requiring physical injury or immediate risk of physical harm); Culpepper v. Pearl St. Bldg., Inc., 877 P.2d 877, 880 n. 3 (Colo.1994) (requiring physical injury or an unreasonable risk of bodily harm, plus either physical manifestation or mental illness); Marlin v. Bill Rich Constr., Inc., 198 W.Va. 635, 482 S.E.2d 620, 637 (1996) (requiring physical injury or a showing "that the claim is not spurious and . . . the emotional distress is undoubtedly real and serious").
[13] Contrary to the case the majority purports to follow, today's decision grants every plaintiff ever exposed to asbestos fibers a prima facie case for negligent infliction of emotional distress.
[14] Even if Gracey and Kush had intended to alter the meaning of "impact," they would not be binding on that issue. Neither case involved an impact without a physical injury. Rather, Gracey involved a psychotherapist's breach of a statutory duty of confidentiality, while Kush involved negligent medical advice leading to the birth of a deformed child. We refused to apply the impact rule in either circumstance. Gracey, 837 So.2d at 356; Kush, 616 So.2d at 423. So again, any statements suggesting an alteration to the impact rule would have been dicta.
[15] Although the Court in Hagan cited Humana only as requiring "injuries," the actual language from Humana more specifically requires "physical injuries." 652 So.2d at 362.
[16] See Woodard v. Jupiter Christian Sch., Inc., 913 So.2d 1188, 1191-92 (Fla. 4th DCA 2005) (certifying the question of whether the impact rule applies to a clergyman's breach of conditionality), review granted, 924 So.2d 812 (Fla. 2006); Thomas v. OB/GYN Specialists of Palm Beaches, Inc., 889 So.2d 971, 971 (Fla. 4th DCA 2004) (certifying the question of whether, absent physical impact, a man may recover for negligent loss of fetus); Abril v. Dep't of Corr., 884 So.2d 206, 213 (Fla. 2d DCA 2004) (certifying the question of whether the impact rule applies when a laboratory negligently discloses confidential HIV test information), approved, No. SC04-1747, ___ So.2d ___, 2007 WL 3024020 (Fla. Oct. 18, 2007); Willis, 881 So.2d at 704 (certifying the four questions in this case); Welker v. S. Baptist Hosp. of Fla., Inc., 864 So.2d 1178, 1188 (Fla. 1st DCA 2004) (certifying the question of whether the impact rule applies where plaintiff negligently loses custody of a child for a significant period), quashed on other grounds, 908 So.2d 317 (Fla.2005); Holt v. Rowell, 798 So.2d 767, 773 (Fla. 2d DCA 2001) (certifying the question of whether the impact rule applies where a criminal defense attorney negligently causes a client's further imprisonment), approved in part and quashed in part, 850 So.2d 474 (Fla.2003); Coca-Cola Bottling Co. v. Hagan, 750 So.2d 83, 92 (Fla. 5th DCA 1999) (Dauksch, J., concurring specially, joined by Sharp, J.) (certifying the question of whether the impact rule should be abolished or amended), quashed, 804 So.2d 1234 (Fla. 2001); Gracey v. Eaker, 747 So.2d 475, 478 (Fla. 5th DCA 1999) (certifying the question of whether there should be an exception to the impact rule for claims resulting from the breach of a statutory duty of confidentiality), quashed, 837 So.2d 348 (Fla.2002); Tanner v. Hartog, 678 So.2d 1317, 1322 (Fla. 2d DCA 1996) (certifying the question of whether parents may recover emotional damages for a negligent stillbirth), quashed in part, 696 So.2d 705 (Fla.1997).